## In re BANNER.

(District Court, S. D. New York. January 18, 1907.)

1. LANDLORD AND TENANT—CONSTRUCTION OF LEASE—DEPOSIT TO SECURE RENT.

   To secure performance of the conditions of a lease by the lessee, it deposited $5,000 with the lessor, to be held by him and, in case the lessee performed the full covenants of the lease through the term, to be applied on the rent for the last six months. On this deposit the lessor agreed to pay interest. *Held*, that such agreement created the relation of debtor and creditor only between the parties with respect to the $5,000, and that the bankruptcy of the lessor and the threatened foreclosure of a mortgage on the property antedating the lease did not entitle the lessee to cease paying rent so long as it continued to occupy the property.

2. MORTGAGES—RIGHT OF MORTGAGEE TO RENTS—EFFECT OF ASSIGNMENT IN MORTGAGE.

   A provision in a mortgage, following the usual one giving the mortgagee a right to a receiver of rents and profits in case of default, that "the said rents and profits are hereby, in the event of any default or defaults in the payment of said principal or interest, assigned to the holder of this mortgage," operates merely as a pledge of the rents, to which the pledgee does not become entitled until he asserts his right in some legal form, as by an application for a receiver and a demand by such receiver.

   [Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, §§ 515, 516.]

In Bankruptcy. On motions to direct preferential payments out of funds in the hands of the trustee.

Leo Levy, for trustee.

Ira L. Bamberger, for mortgagee.

Henry S. Dottenheim (Mr. Matthews, of counsel), for Riggs Restaurant Company.

HOUGH, District Judge. The bankrupt was the owner of No. 468 Broadway, New York City. Some time prior to his bankruptcy he executed a second mortgage to the Broadway Trust Company, which, after the usual proviso giving to the holder of the mortgage a right to a receiver of the rents and profits of the premises without regard to the adequacy of the security, continues:

"And the said rents and profits are hereby, in the event of any default or defaults in the payment of said principal or interest, assigned to the holder of this mortgage."

After the execution and recording of the mortgage containing these words, the bankrupt leased a portion of the building to the Riggs Restaurant Company, which lease was duly recorded, and provides that the tenant (the Riggs Company) "does deposit and pay over to the landlord (the bankrupt) $5,000, to be held by the landlord for the punctual payment and performance of the covenants and agreements" of the lease. It further declares that, should the tenant "fully pay the rent" and perform the agreements of the lease "up to and during the full term and period of this lease," the deposit of $5,000 shall be applicable to "the last six months' rent" of the premises. Upon this deposit the bankrupt agreed to pay the Riggs Company interest. The option, however, was given to the Riggs Company to demand that the bankrupt "repay" the Riggs Company the said $5,000, provided that "other suitable and sufficient security" be deposited in lieu thereof. There are other provisions of the lease regarding this deposit of money, which, however, only emphasize the fact that it was a deposit with Banner, as to which it was "agreed that no action or proceedings of any kind shall be instituted, begun or carried on by the tenant * * * until after the expiration of the full term of this lease as originally made."

Some months later, and on April 24, 1906, a petition in bankruptcy was filed against Banner. Adjudication followed on the 4th of June, 1906, and, under the bankruptcy proceedings, first a receiver and then a trustee took possession of No. 468 Broadway and collected the rents thereof, including rent from the Riggs Company. Shortly after the appointment of the receiver in bankruptcy, it being obvious that the failure was a bad one, the Riggs Company objected to continuing to pay rent to the receiver, but were compelled so to do by the receiver's refusing to treat the deposit with the bankrupt as anything that entitled the Riggs Company to cease the payment of rent while still enjoying the possession of the premises. Thereafter rent was paid regularly, but under protest. On August 17, 1906, an action to foreclose the mortgage in question was begun, and on August 27th, upon application being made to the Supreme Court of the state, a receiver of the rents and profits of the building was appointed. It being then uncertain whether the sale of the premises in foreclosure would produce a fund sufficient to discharge the mortgage indebtedness, this court refused (for the time) an application promptly made by the state court receiver to turn over to him, on behalf of the Broadway Trust Company, the moneys in the hands of the trustee in bankruptcy derived from the premises in question. On November 23d the sale in foreclosure was

had, a deficiency judgment resulted, and the property passed out of the hands of the trustee in bankruptcy, who now has in hand a fund derived from the rentals of the building, out of which the Riggs Restaurant Company demands to be preferentially paid so much as results from payments made under protest by it, and all of which the Broadway Trust Company demands as being the result of collections of rents assigned to them by the mortgage first above alluded to and now foreclosed with a deficiency.

The rights of the Riggs Restaurant Company can best be tested by considering its claim as pressed against the general creditors, rather than against the mortgagee. Without regard to the mortgagee's rights, if any, I am unable to perceive that the agreement between Banner and the Riggs Company created anything more than the relation of debtor and creditor. To make the agreement in the lease more than this, the contention must go to the length that, whenever Banner's title was threatened by a right superior in law or prior in time to the lease in question, such threat operated to permit the tenant, not to instantly recover $5,000 from Banner, but to stop paying rent until the threat of ejectment or dispossession was passed. That this meaning can be found in the words above quoted does not, I think, bear argument.

Concluding, therefore, that the Riggs Restaurant Company is but a general creditor, it remains to consider the rights acquired by the Broadway Trust Company under its mortgage. The general rule in this state has been summed up in Frank v. New York, etc., Railroad Co., 122 N. Y., at page 221, 25 N. E., at page 338:

"A mortgagee out of possession has no lien upon rents. Until he elects to take possession or moves for a receiver, the rents belong to the lessor"—i. e., mortgagor (citing earlier cases).

In this matter it is urged that the assignment clause, following in the mortgage the proviso for a receiver, operated to vest in the mortgagee title to the rents eo instanti a default occurred in the payment of interest. Such default did occur almost cotemporaneously with the appointment of the receiver in bankruptcy, with the alleged result that all the moneys in the trustee's hands derived from the premises in question have from the moment of default been the property of the mortgagee. This view is thought to find support in Harris v. Taylor, 35 App. Div. 462, 54 N. Y. Supp. 864, and a decision of the Appellate Term, following and relying upon that decision, in Thompson v. Erskine (Sup.) 73 N. Y. Supp. 166. In the first of these cases there was an independent assignment of the rents, operating in præsenti, entirely distinct from any mortgage at all, and such assignment made by the mortgagor was held superior to the claim of a mortgagee whose receiver had obtained possession of the rents so assigned. In the latter case the assignment was contained in the bond which accompanied the mortgage, and, relying upon Harris v. Taylor, supra, it was held that such an assignment enabled the assignee, who was also the mortgagee, to directly sue, after notice and demand, a tenant of the mortgagor, although the mortgagee was out of possession and the mortgagor still owned the premises.

I cannot reconcile this last doctrine with the well-known practice of the Supreme Court of this state in holding that even a specific proviso for a receiver does· not control the court when a receiver is asked for (Thomas v. Davis [Sup.] 85 N. Y. Supp. 661); nor with Butler v. Frazer (Sup.) 57 N. Y. Supp. 900, where an assignment of rents contained in the mortgage was treated merely as a pledge, and a good reason for the appointment of a receiver to collect the same. I am not aware that the difficulty created by the addition of an assignment clause to a receivership clause in a New York mortgage has received the attention of the New York Court of Appeals, and I therefore follow Freedman's Saving Co. v. Shepherd, 127 U. S., at page 502, 8 Sup. Ct., at page 1254, 32 L. Ed. 163, holding that it is "competent for the parties to provide in the mortgage for the payment of rents and profits to the mortgagee while the mortgagor remains in possession. But when the mortgage contains no such provision, and even where the income is expressly pledged as security for the mortgage debt, with the right in the mortgagee to take possession upon the failure of the mortgagor to perform the conditions of the mortgage, the general rule is that the mortgagee is not entitled to the rents and profits of the mortgaged premises until he takes actual possession, or until possession is taken in his behalf by a receiver, or until in proper form he demands and is refused possession." This I believe is the true view. That a mortgagee out of possession can, upon the instant of a default in mortgage interest, become to all intents a landlord of the mortgaged building, seems to me something not to be encouraged. The form of words used in this mortgage operated merely as a pledge of the rents, to which the pledgee does not become entitled until he asserts his right and in some legal form endeavors to reduce the pledge to possession. An application for a receivership, followed by due demand, is such an appropriate form; and this form was followed within a few days after the appointment of the state court receiver, to wit, on or about September 1, 1906.

The petition of the Riggs Restaurant Company is denied, and that of the Broadway Trust Company granted, so far as to direct the trustee herein, upon final settlement of his accounts, to pay over to the Broadway Trust Company all rents accruing from 468 Broadway from and after September 1, 1906, subject, however, to such equitable charges for the fees of the trustee and his attorney as may be allowed upon final settlement of his accounts, to which settlement the Broadway Trust Company is hereby allowed to become a party, entitled to except thereto and to be heard thereon.