EUCLID HOLDING COMPANY, Landlord, *v.* KERMACOE REALTY CO., INC., and Another, Tenants.

Municipal Court of New York, Borough of Manhattan, Fifth District, February 16, 1928.

Summary proceedings to dispossess — defense that rent was appropriated out of deposit not sustained by evidence — illegal entry by landlord, resisted by tenant, not defense — conversion of deposit not shown — taxes and rent due amounted to more than deposit.

This is a summary proceeding to dispossess based on non-payment of rent. The original tenant, defendant's assignor, deposited $75,000 with the plaintiff as security on which the plaintiff agreed to pay six per cent interest. The verdict of the jury in favor of the defendant to the effect that after the quarterly rent was due the plaintiff appropriated the amount thereof from the amount on deposit is contrary to the evidence.

The act of the plaintiff in commingling the amount deposited with it as security with its other funds does not bar it from maintaining this proceeding, for it would seem that the plaintiff has a right to make use of the money in view of the fact that it is required to pay interest thereon.

The act of the plaintiff in attempting illegally to take possession of the leased premises and to collect the rent therefrom does not bar this proceeding, for while it might have justified the defendant in abandoning the premises, the defendant did not do that and retained its possession and, therefore, the tenant being in default in payment of rent the proceeding may be maintained.

Furthermore, it appears that the amount of the rent due and the amount of taxes which the plaintiff had to pay together amount to a sum larger than that deposited as security, and, therefore, there could be no conversion of the security since there was none left to convert.

SUMMARY proceeding to dispossess for non-payment of rent.

*Theodore Berger* [*George M. Boynton*, attorney], for the landlord.

*Herman Joseph*, for the tenant Kermacoe Realty Co., Inc.

ROSALSKY, J. This is a summary proceeding for non-payment of rent. It is brought by the owner in fee against the tenant and assignee of the tenant, to recover possession of two apartment houses situate within the territorial jurisdiction of this court.

On November 1, 1925, the landlord and the Van Dyck Holding Corporation entered into a written lease of said premises. The term was for twenty-one years, renewable at the tenant's option until the year 2030. The tenant covenanted during the year 1927 to pay the rent of $185,000 in quarter-annual installments in advance, and also the taxes as they became payable on the leased premises. When the lease was executed, the tenant deposited with the landlord the sum of $75,000 as security for its faithful performance. The landlord agreed to pay interest on said deposit at the rate of six per cent per annum.

On March 10, 1927, said tenant assigned the lease together with the security deposit to the Kermacoe Realty Co., Inc., which has ever since continued in possession of the premises.

On November 1, 1927, the quarterly installment of rent amounting to $46,250 became due; and, not having been paid after due demand, on December 8, 1927, this summary proceeding was brought. The defense was payment. On the trial before the court and a common-law jury, the tenant was allowed to amend its answer to set up a further defense that the landlord violated its obligation under the lease by converting the security and is thereby barred from maintaining this summary proceeding.

The president of the Kermacoe Realty Co., Inc., the assignee of the tenant, testified that by oral conversation had about December 2, 1927, the landlord had applied the sum of $46,250, the quarterly installment of rent claimed herein, from the security deposit of $75,000, and thus took the same in payment of the rent. This was emphatically denied by three witnesses for the landlord and was not supported by the tenant's witness Sussman. It cannot be said that there was literally no evidence that ought reasonably to satisfy a jury on the issue. (*Matter of Case*, 214 N. Y. 199, 203; *McDonald* v. *Metropolitan St. R. Co.*, 167 id. 66.) I am satisfied, however, that the verdict for the tenant is against the weight of the evidence on that issue.

The landlord admitted that it had commingled the security deposit of $75,000 received from the original tenant herein, with its general funds in the bank, and had drawn from the same from time to time below the amount of the security. At the time this proceeding was commenced, the amount on deposit was substantially less than the amount of the security.

The tenant, therefore, urged that the failure of the landlord to keep intact the moneys deposited as security for the faithful performance of the terms of the lease constituted a conversion of the moneys so deposited (*Degnario* v. *Sire*, 34 Misc. 163; *Matter of Atlas*, 217 App. Div. 38; *Alumor Garage* v. *Stivers, Inc.*, 128 Misc.

400; Editorial, N. Y. L. J. Oct. 5, 1926), and that until the landlord restores the security deposit, it is barred from maintaining summary proceedings.

Before the ruling in *Matter of Atlas* (*supra*) it was considered that the covenants of the tenant to pay rent, and of the landlord to return the security deposit, were collateral; and that the latter covenant did not run with the land. (*Fallert Brewing Co., Ltd.*, v. *Blass*, 119 App. Div. 53; *Knutsen* v. *Cinque*, 113 id. 677.)

Under the holding in *Matter of Atlas* (*supra*) where the landlord converts the security given by the tenant, it violates the terms of the lease and is not entitled to maintain summary proceedings. But where, as here, the tenant continues in possession under the lease, its obligation to keep the amount on deposit would continue. This follows, of course, for if the tenant should wish to remain under the terms of the lease, it would be compelled to abide by its terms.

It appeared that on December 8, 1927, at the time of, or shortly after, instituting this summary proceeding, the landlord instead of joining the occupants of the two leased buildings as under-tenants herein, sent notice to them that it had resumed possession of the premises, under a default clause in the lease; and the landlord put a superintendent in charge of the property, claiming that the tenant had ceased paying the help and carrying charges; and in order to avoid loss and waste, the landlord proceeded to pay the help and charges for the upkeep of the property, and collected some checks from the subtenants which it still holds, and has not used.

The landlord could not thus take the law into its own hands. The breach of covenant in a lease would not give the landlord the right forcibly to interfere with the enjoyment of the use of the premises by the tenant, nor forcibly to eject any person who occupied the premises with the tenant's approbation. A landlord has no right to enter upon his tenant's premises during the term of the lease without the tenant's consent. (*Shannon* v. *Burr*, 1 Hilt. 39.) Such interference may be tantamount to an eviction. (*Broadway Bldg. Co.* v. *Myers*, 49 Misc. 531.)

By declining to permit the tenant any longer to collect rents from its subtenants, the landlord had wrongfully deprived it of its enjoyment of the demised premises; and after the landlord had done this, the tenant was at liberty to give up all possession or claim to possession, and certainly thus limit the landlord's claim against the tenant to the amount then actually due for rent under the lease. It was evidence of an abandonment compelled by the landlord's acts. (*Burhans* v. *Monier*, 38 App. Div. 466, 468.)

But the tenant did not abandon the premises. It resisted the

landlord's unauthorized acts.    It admits that it is still in possession of the premises and, while this proceeding was pending, in January, 1928, the tenant instituted in this court as landlord against some forty-seven or forty-nine subtenants, summary proceedings of dispossess.    This court cannot apportion the blame in respect of the conflicting claims against the subtenants in this proceeding.

The fact remains that by the terms of the lease, the rent of $46,250 was to be paid on November 1, 1927, in advance for that quarter.    The tenant came under an absolute engagement to pay it on the day fixed, and it is not relieved from that engagement by the subsequent occurrence.    (*Werner* v. *Padula*, 49 App. Div. 135; affd., 167 N. Y. 611.)    The tenant is in default in not paying the rent so admittedly due.

If the rent were paid by application of the amount due from the security deposit, that finding would end this proceeding.    But such a finding being against the weight of the evidence, I am, therefore, brought back to the claim of alleged conversion of the security operating as a bar to this summary proceeding.

On this point the landlord urges that the provision in the lease whereby it agreed to pay to the tenant interest on the security deposit at the rate of six per cent per annum, negatives the contention that this security deposit was to be kept either actually or constructively as a separate fund.    (*Matter of G. & G. Cigar Co. Inc. [Blatt]*, N. Y. L. J. Feb. 9, 1928, DELEHANTY, J.)

In *Wallace* v. *Clift* (27 Hun, 399; 15 Week. Dig. 156), where one received money to indemnify him under an agreement and stipulated to pay legal interest, and deposited such money in a bank in his own name as " trustee," it was held to create merely a debtor and creditor relationship.

In *Colantuoni* v. *Balene* (95 N. J. Eq. 748) the tenant had deposited security with the landlord.    It sought in equity the appointment of a receiver and a declaration of a trust fund at the termination of the lease upon the security.    The New Jersey Court of Errors and Appeals held that, at most, the security might be a pledge but since, as the evidence disclosed, the landlord had deposited this money in a business bank account, there was not even a breach of the pledgor-pledgee relationship, because of the fact that the landlord was obliged to pay interest at the rate of four and one-quarter per cent per annum.

The provision of the lease here requiring the landlord to pay the tenant interest at the rate of six per cent per annum on the security deposit, presents a strong circumstance indicating that the landlord was entitled to make some use of the money, although some forms of investment authorized to trustees yield that rate of

interest, such as first mortgage real estate bonds.    But this argument, or a precedent holding that money deposited under a lease creates an indemnity contract and not a fiduciary obligation (*Matter of Sherwoods*, 210 Fed. 754, citing *Chaude* v. *Shepard*, 122 N. Y. 397; 2 Tiffany Landl. & Ten. § 323; *Matter of Banner*, 149 Fed. 936, 938; " Some Legal Problems Involved in the Transmission of Funds " by Dean Stone [now U. S. Supreme Court justice], 21 Col. Law Rev. 507, 511), must yield to the authority of the *Matter of Atlas* and *Alumor Garage Cases* (*supra*) where interest was to be paid on the deposits.    Whether there was to be one rate of interest or another, would not be a conclusive factor on the question of the landlord's right to appropriate or make use of the deposit.

If, however, the landlord had to treat the security deposit as a bailee or trustee for the special purpose for which it was deposited, nevertheless it is clear that if the landlord restored the entire amount of the security, it would be entitled to claim the rent.    If it restored the amount of security, less the rent admittedly owing, it would be entitled to have the tenant replenish the security and also to maintain summary proceedings for the non-payment of future rents.

The amendment of the answer to permit pleading the defense of conversion of the security deposit in bar to this proceeding, occurred on the trial.    The landlord then proved that on November 1, 1927, the tenant was obliged, under the terms of the lease, to pay the second half of the taxes in the sum of $39,825, which became a lien on the premises, and was then payable by the tenant, which remained unpaid.    On December 27, 1927, the landlord paid the same with seven per cent interest for account of the tenant and to make good his default, amounting in all to $40,260.35.    Adding $46,250, the quarterly rent admittedly owing to the tax so paid, there was a total of $86,510.35 owing by the tenant.    Against this sum, the tenant had a security deposit of $75,000, which was thus exhausted, and, indeed, left a deficiency still owing by the tenant of $11,510.35.

As the tenant still continues in possession of the premises, it can justly claim no conversion of the security deposit, since there is nothing left to convert.

In the *Alumor Garage Case* (*supra*) Lauer, J., said: " The tenant in this proceeding, who remains in possession and seeks a reduction of the security, ought not to prevail in equity.    There exists, therefore, in my opinion, a good equitable defense to the counterclaim."

The tenant, admitting its duty to replenish the security (which it makes no attempt to do), argues that the landlord would have a good equitable defense here, if a counterclaim were interposed,

but that inasmuch as it does not counterclaim, and merely asserts a defense, there can be no such thing as an offset or defense to a defense. This argument might sound plausible as a matter of pleading, but it does not hold good in substance. The tenant having breached the covenants to pay rent and taxes, was itself a wrongdoer. It is entitled to no premium for its delinquency. The landlord is left with no security deposit or fund to which a claim of conversion can attach. The tenant cannot default and have the premises, too.

Verdict set aside and new trial granted.    Settle order.