HYMAN FROST and SADIE FROST, His Wife, Respondents, *v.* PAULSTER REALTY CORPORATION, Appellant.

County Court, Westchester County, December 26, 1930.

*Charles P. Andrews*, for the appellant.

*Rubin & Rubin*, for the respondents.

CLOSE, J. This is an appeal from a final order of the City Court of New Rochelle awarding possession of certain premises in summary proceedings to the landlords. The petition is in the usual form. The answer is a general denial and a counterclaim based upon an alleged breach of trust, the charge being that the landlords have converted for their own use the sum of $8,500 which was on deposit with them in trust as security for the faithful performance of the covenants of the lease on the part of the tenant.

Upon a previous appeal the order was reversed upon the ground that the learned court below erred in excluding evidence on the part of the tenant offered to sustain the allegations of its counterclaim. Upon a second trial the issues presented by the counterclaim have been fully tried. The tenant again appeals, claiming that it has affirmatively established that the landlords committed a breach of trust and that, therefore, the tenant is entitled to an affirmative judgment for the balance on deposit, the premises having been vacated after the precept was served.

Upon a previous appeal, this court held that the principles enunciated in *Matter of Atlas* (217 App. Div. 38) apply. That decision was based upon the construction which this court placed upon the 26th paragraph of the lease, which, in substance, provides that the tenant may deposit with the landlord the sum of $8,500 as security for the faithful performance of the terms and conditions of the lease to be performed by the tenant, and upon such performance the landlords agree to return the said sum of $8,500, with interest at the rate of four per cent per annum. Upon a previous trial there was no evidence permitted to explain or construe this clause in any way, and standing alone and by itself, I am still of the opinion that it comes within the rule laid down in *Matter of Atlas* (*supra*). However, upon a second trial, the record establishes that when the transaction was closed and the security deposited, the conduct of the parties was such as to negative the appellant's claim.

The security of $8,500 was delivered by the tenant to the landlords by various checks, to wit, one of $500, one of $3,500, one of $1,500, one of $875, one of $1,000 and one of $1,125. The evidence establishes that the tenant had apparently borrowed at

least a portion of this fund from various people. None of the checks delivered were drawn by the tenant. Two of the checks were certified. These aggregated $5,000. The balance was tendered in the form of one check for $500 and one for $3,000.

At the suggestion of the landlords and their attorney, and with the acquiescence, consent, assistance and co-operation of the tenant, the $3,000 check was divided into three checks, one for $1,000; one for $1,125 and one for $875. After the check had been thus divided and while all the parties were present, the landlords indorsed over to their attorney the check for $1,000, and indorsed over and delivered to the agent who negotiated the lease the check for $1,125. The record establishes that the reason for thus dividing the $3,000 check was made known at the time and was all a part of the closing of the lease and the delivery of the security. After the agent received the check for $1,125 in payment of his commissions from the landlords, he in turn indorsed this identical check back to the tenant as a loan which the tenant thereafter repaid.

The evidence amply establishes the fact that the landlords did not treat the balance of this deposit as a trust fund but commingled it with their own funds and used it for their own purposes.

The question then presented is whether the deposit of $8,500 establishes the relation of trustee as between the landlords and the tenant, or the relation of debtor and creditor. There can be no question that if this division or diversion of this fund had not occurred in the presence and with the acquiescence of the tenant, the deposit would be treated as a trust fund and the landlords would be answerable to the tenant for a breach of their trust. (*Matter of Atlas, supra.*) But the tenant having by its action assented to and concurred in the breach of trust cannot now be heard to complain. (*Vohmann* v. *Michel*, 185 N. Y. 420, 426.) Here the tenant took an affirmative part in the diversion of the trust fund. Even if it had not done so and stood silently by, it is bound by what occurred because if a complaint had been made, the trustees might have abstained from such diversion of the trust fund. There is an affirmative duty upon the tenant to speak because its silence induced the belief that it consented. (*Giles D. M. Co.* v. *Klauder-Weldon D. M. Co.*, 233 N. Y. 470.) It does not seem reasonable that the tenant can claim that there was a breach of trust on the part of the landlords as to the balance of the deposit which was traced in the landlords' bank account, namely, $6,375. They could not have intended to have one rule of law apply to part of this fund and another rule apply to the balance. It might be otherwise if the fund had come into possession

of the landlords at a subsequent time. (*Ireland* v. *Ireland,* 84 N. Y. 321.)

There is another difficulty in the way of the appellant in this case. It seems to me that by the conduct of the parties at the closing, they construed the language in this lease to establish a different relationship than that of trustee and beneficiary: "Contracts must always be construed in reference to the subject matter to which they relate, and in the light of the contemporaneous facts and circumstances. Evidence of the extrinsic circumstances existing at the time is therefore always admissible, not to contradict the written agreement, but to aid in its interpretation." (*Phelps* v. *Bostwick,* 22 Barb. 314, headnote.)

The question when this security was paid over was — To whom did the money belong? Did it remain the property of the tenant to be kept intact and inviolate by the landlords or was it the property of the landlords to do with as they wished, subject only to a claim as for money had and received at the end of the term if the tenant performed? The evidence clearly establishes that the parties construed the language in the lease to mean that the money was not to be deposited as a trust fund but was to belong to the landlords until such time as they were under a duty to repay it to the tenants.

Judgment affirmed, with costs.