David C. Goodman, as Assignee of the Rents and with the Right to Dispossess Tenants of Granada Towers, Inc., Landlord, Respondent, *v.* Benjamin Schached, Tenant, Appellant.

County Court, Nassau County, October 10, 1932.

*George Feuerstein* [*Milton N. Pincus* of counsel], for the appellant.

*Cherey & Goldblatt* [*Nathan M. Cherey* of counsel], for the respondent.

Johnson, J. The petition sought the removal of the tenant for non-payment of rent and judgment for the unpaid rent. The

tenant now asserts that the petition was insufficient to confer jurisdiction upon the court below. The proceeding was instituted, not by the landlord owner of the premises who made the lease to the tenant, but by an assignee to whom such landlord had assigned rents with power to institute and prosecute summary proceedings to remove tenants. The petition alleged that the petitioner was the assignee of the owner in fee and landlord of the premises " as to the rents with the right to dispossess tenants in respect to the premises." The application to dispossess in summary proceedings may be made by " the legal representative, agent or assignee of the landlord, purchaser or other person so entitled to apply " (Civ. Prac. Act, § 1414, subd. 6); and the petition is required to disclose " the interest therein of the petitioner or the person whom he represents, stating the facts which, according to the provisions of this article, authorize the application by the petitioner, * * *." (Civ. Prac. Act, § 1415.)

The tenant did not question the jurisdiction of the court below or the sufficiency of the petition by special appearance, motion, objection or otherwise. On the contrary, he appeared generally and answered, denying knowledge or information sufficient to form a belief. At the trial the assignment was offered and received in evidence without objection. It granted the assignee complete authority as follows: " * * * and to institute and carry on all legal proceedings necessary for the protection of the above described premises, including such proceedings as may be necessary to recover the possession of the whole or any part of said premises, and to institute and prosecute any and all suits for the collection of rents and all other revenues from said premises which may now be due, and to institute and prosecute summary proceedings for the removal of any tenant or tenants or other persons from said premises, and to pay the costs and expenses of all such suits and proceedings out of the rents and other revenues received."

Upon the argument of the appeal the tenant conceded that under this assignment the summary proceedings could properly be brought by the assignee. The proof adduced at the trial shows that the tenant paid rent to the assignee and did not question his authority. The tenant asserts, however, that the defect being jurisdictional, he may, nevertheless, urge it upon the appeal. It has been held that an assignee of rents may not bring summary proceedings to dispossess unless possession or right to possess has been granted him by the landlord (*Emigrant Industrial Savings Bank* v. *N. A. Radio Corp.*, 140 Misc. 639; *Kelly* v. *Smith*, 16 N. Y. Supp. 521; *510 West End Avenue, Inc.,* v. *Frankel,* 113 Misc. 338; *Sackman* v. *Tuckman,* 141 id. 166); from which it would appear

that the petition should show that the petitioner, as assignee of the rents, was granted possession or right to possess by the landlord. There were also authorities to the effect that if the petition fails to show the right of the petitioner to maintain the proceedings, the court acquires no jurisdiction, that the objection to such insufficiency is not waived by answering but may be raised at any time even on appeal. (*Eldaen Realty Co.* v. *Bensamon,* 56 Misc. 463; *Cram* v. *Dietrich,* 38 id. 790.) There are still other early decisions holding that such a defect in the description of the petitioner's interest in the premises deprives the court of jurisdiction, without holding, however, that such a defect is so jurisdictional as to be incurable. (*Fuchs* v. *Cohen,* 19 N. Y. Supp. 236; *Dreyfus* v. *Carroll,* 28 Misc. 222.) On the other hand, it was more recently held in this court that in such a case the tenant by appearing generally, joining issue, going to trial on the merits and making no motion during the case or at its close, waived the jurisdictional defect. (*Carman* v. *Fox,* 86 Misc. 197.) Although it has since been said in another court that the summary proceeding being statutory, the statute must be strictly followed to give the court jurisdiction and that if the defect is vital, no amendment can be granted (*Marmac B. & H. Corp.* v. *Vassar G. Corp.,* 124 Misc. 226), nevertheless this is but reiteration of the general rule formerly followed in statutory proceedings and I am not convinced that in our modern practice that principle should be so strictly adhered to as to prevent the curing of such a defect as is alleged to have existed in the petition in this proceeding. It is not a case where jurisdiction of the subject-matter is involved of the kind which would prevent the parties from conferring jurisdiction on the court; and if in fact it is a subject-matter over which the court has jurisdiction, it would seem quite proper for the parties by consent to confer such jurisdiction even if the petition originally lacked sufficient allegations. Such seems to me to be the result of the position taken by the tenant in this case, both in his pleading and at the trial.

However, it is not necessary to base the decision upon that point on the proposition of waiver or consent. Clearly the statute authorizes the proceeding to be maintained by an assignee of the landlord. Clearly the statute likewise requires such petitioner to state the facts which authorize him to make the application. Under the authorities cited by the appellant it must appear, therefore, that he is an assignee of the rents with the right to possession. The petition alleges that he is the assignee of the rents with the right to dispossess tenants from the premises. To my mind this absolutely indicates that he is an assignee with the right to possess from the landlord as it necessarily follows that his power to dis-

possess tenants carries with it the right to possess. Consequently, the petition sufficienctly discloses the status of the petitioner and that he was a person authorized by the statute to make the application and the point now urged by the tenant is without merit.

The basis of the proceeding is a written lease made by petitioner's assignor to the tenant of the premises in question for a period of nine years, nine and one-half months from June 15, 1930, and the tenant's failure to pay rent due for the months of May, June and July, 1932. By his answer the tenant admitted the making of the lease and the failure to pay the rent in question but demanded a dismissal of the petition upon the ground that the tenant had deposited with the landlord the sum of $750 to secure performance of the lease; that the landlord had commingled such moneys with his own funds and used them for his own purposes, thus breaching the lease. He furthermore, by way of counterclaim, sought judgment against the landlord for the said sum of $750 and interest thereon. Upon this defense the burden of proof passed to the tenant.

To support his defense and counterclaim he relies upon *Matter of Atlas* (217 App. Div. 38). Prior to that decision it had been consistently held that a mere deposit to secure performance of a lease, without further or specific agreement, created only the usual relationship of debtor and creditor. In the *Atlas* case the Appellate Division in the Fourth Department, by a divided court, held that, under the circumstances there disclosed, an intention was apparent that the moneys deposited as security were to be kept intact; and it appearing that they had not only been commingled but had actually been used for private purposes and the fund depleted, there was a conversion. In that case, however, the lease provided in substance that the moneys were to remain or " shall be held by the parties of the first part in escrow," and a receipt for the same was given by the landlord to the tenant reciting that the funds were received by the landlord " to be held by us in escrow." It was also stipulated in the case " that the deposit in escrow " was made in that form " to protect the lessee against any possible future bankruptcy of the lessors." Such provisions, in conjunction with the other facts in the case, held by the court to evidence an intention of the parties that the moneys be held in a trust or fiduciary capacity, may well justify the conclusion reached by the majority of the court upon the particular form of agreement involved in that case. The decision was commented upon with approval by Professor Wormser, editorially in the New York Law Journal of October 5, 1926, the statements in such editorial indicating Professor

Wormser's opinion that the principle should not be confined to the facts disclosed in the *Atlas* case but should be applied generally to all cases where a deposit is made by the tenant with the landlord to secure performance of the lease. Other courts have also followed to some extent the decision in the *Atlas* case. (*Frost* v. *Paulster Realty Corp.*, 138 Misc. 597; *Alumor Garage* v. *Stivers*, 128 id. 400.) I do not find, however, any decision of the Appellate Division in the Second Department or of the Court of Appeals which would impel me to hold that the principle applied by the court in the *Atlas* case should apply to a case where money is deposited by tenant with landlord as security for performance of the lease with nothing further to indicate any agreement or intention that the sum be held in a trust or fiduciary capacity. The appellant refers to *Frontenac Hotel Co.* v. *Schwarz* (228 App. Div. [2d Dept.] 790) and *Maujer Holding Corp.* v. *Vitagraph Garage* (236 id. [2d Dept.] 744). It appears that the question involved in both these cases was the sufficiency of the complaint, and so far as the record discloses, the decisions therein of the Second Department, Appellate Division, were not adjudications to the effect claimed by the appellant. In fact the letter referred to by counsel for the appellant, commenting upon the *Maujer* case in the New York Law Journal, September 2, 1932, indicates that the question there rested upon the proposition that upon the facts disclosed it might appear that the officers of the landlord corporation by their own actions made themselves trustees for the benefit of the tenant.

If the decision in the *Atlas* case were to be extended as claimed and urged by the appellant, it would not easily be reconciled with the decision and the dicta of the Court of Appeals in *Sagone* v. *Mackey* (225 N. Y. 594), wherein the court said (p. 598): " We shall pass the proposition which certainly may be argued with much force that the final arrangement under which plaintiff left her moneys with defendant was that of a simple deposit creating the ordinary relation of creditor and debtor and assume that the surety company held them in a fiduciary capacity. Even so, in the absence of some special agreement it was not compelled *to hold the identical moneys or even to deposit them in a special account. It had the right to deposit them in a general account with other moneys. This method was doubtless subject to certain risks, but it did not amount to a conversion."* (*Matter of Barnes*, 140 N. Y. 468; *Bischoff* v. *Yorkville Bank*, 218 id. 106.)

And further, " It being permissible for the surety company to deposit the funds received from plaintiff in the general account without being guilty of conversion. *I think it at least debatable whether the company would have become guilty of conversion if it had*

*used the balance in such account for its business uses so long as it retained in some other account sufficient funds with which to meet its obligations."*

In any event the situation now presented is not controlled, in my opinion, by the decision in the *Atlas* case. Here the lease involved provided as follows: " The Tenant has this day deposited with the Landlord the sum of Seven hundred and fifty ($750.00) Dollars as security for the full and faithful performance by the Tenant of all the terms and conditions upon the Tenant's part to be performed, which said sum shall be returned to the Tenant after the time fixed as to the expiration of the term herein, provided the Tenant has fully and faithfully carried out all the terms, covenants and conditions on his part to be performed.

" That the security deposited under this lease shall not be mortgaged, assigned or encumbered by the Tenant without the written consent of the Landlord.

" The Tenant has deposited with the Landlord as security the sum of Seven hundred and fifty ($750.00) Dollars, the receipt whereof is hereby acknowledged, and the sum of Two hundred and fifty ($250) Dollars in payment of the rent due June 15th, 1930. The Tenant shall be entitled to take immediate possession of the said demised premises for the purpose of making repairs and alterations thereto, and for the purpose of equipping the same with proper furniture, fixtures and stock for the use thereof of the drug store; and it is agreed that in the event the Tenant shall not be prepared, equipped and ready to commence business in said premises as a drug store on June 15th, 1930, then and in that event the sum of $250, a portion of said deposit due July 15th, 1930, and the balance of the said deposit shall be applied toward the last two months of the term of the lease, as hereinbefore provided. The Landlord agrees to pay interest at the rate of Four (4%) per cent per annum on said security, payable annually."

This was followed by a provision whereby the chattels on the leased premises were acquired by the landlord as security to become his property in case of the tenant's default. There is in this lease, therefore, no provision that the deposit is to be held in escrow or in trust or in any manner other than follows the usual relationship of debtor and creditor. On the contrary, the sum in question is merely " deposited " with the landlord as security for performance by the tenant, and the sum is to be " returned," to the tenant at the expiration of the term of the lease, provided the tenant has fully performed. There is nothing here whereby the landlord agrees to hold or to keep the fund. His only agreement is to return the same to the tenant at the time and under the conditions stated.

Nor am I able to find in the lease or in the proof of the parties anything to indicate an intention on their part that the fund was to be held intact and in a separate account, and that any commingling or private use thereof by the landlord would constitute a conversion. In this particular case it appears that the tenant was in possession of the premises with three months' rent in arrears. When the landlord seeks to dispossess him he demands, by virtue of his defense, the right to have the proceeding dismissed and at the same time to recover by way of counterclaim, the amount of the deposit or to set it off against the rents accrued. It does not seem equitable or even sound logic under such an agreement to hold that a tenant may assert such commingling, or use of the fund by the landlord, as a defense to the summary proceeding so that he may still continue in possession and at the same time recover back the deposit or have it set off against the unpaid rent. By insisting on his right to continue in possession under the lease by reason of the landlord's alleged conversion, it is difficult to see why he should be allowed both to recover for the conversion and to continue to hold under the lease. Surely in a court of equitable jurisdiction the landlord would have an equitable defense to such a claim. (See dissenting opinion of HUBBS, J., in the *Atlas Case, supra; Alamor* v. *Stivers*, 128 Misc. 400.)

On the contrary, it appears to me that the provisions here involved are substantially the same as those which have heretofore been construed as creating merely the usual relationship of debtor and creditor. (*Haskel* v. *60 West 53rd St. Corp.*, 138 Misc. 595; affd., 231 App. Div. [1st Dept.] 800; *Freedman* v. *Isaacs*, 133 Misc. [App. Term, 1st Dept.] 435; *Mendelson-Silverman, Inc.*, v. *Nalco Trading Corp.*, N. Y. L. J. August 6, 1932, App. Term, 2d Dept.). The provision in the agreement on the part of the landlord to pay interest on the money deposited may be taken as some evidence of an intention not to keep the deposit separate and distinct. (*Matter of G. & G. Cigar Co., Inc.*, 131 Misc. 622.) In searching for such intention I can find no substantial distinction between those provisions of the lease relating to the money deposit and those relating to the putting up of chattels as security. If the latter may be commingled, why not the former? I can glean from the terms of the lease no evidence of an intention in either case to create such a trust or fiduciary relationship as is now claimed by the tenant.

I come then to a discussion of the *Mendelson-Silverman Case* (*supra*). At the time of the making of that decision, the *Atlas* case was, of course, well known and had been thoroughly discussed. In fact, as is pointed out by the appellant, it had been cited by the same Appellate Term, Mr. Justice MacCRATE writing the memorandum

in an unreported decision in June, 1928, in *Kuneland* v. *Epok Garage.* In that memorandum, however, Mr. Justice MacCrate said, " the landlord by the lease, agreed to hold the deposit as security." Although the exact terms of the lease are not shown in the memorandum, it appears from the words used by Mr. Justice MacCrate that it contained some such provision as was contained in the lease in the *Atlas* case whereby the landlord was bound not merely to return the money but to hold it in such a way that he could not use it for his own purposes although he was not necessarily required to maintain it as delivered. It is not certain, therefore, that the Appellate Term (2d Dept.) by its decision in the *Mendelson-Silverman* case reversed its former decision. If it did, however, it is only greater proof that the court made its decision in the *Mendleson-Silverman* case with the view, as stated in its opinion, of finally settling the rule, in view of the conflict which had arisen following the decision in the *Atlas* case. The opinion in the *Mendelson-Silverman* case may, therefore, be taken as a well-considered statement on the subject now before us. That decision is distinctly applicable to the situation here presented which is in all substantial respects similar to that presented in the *Mendelson-Silverman* case. There, as here, the tenant had interposed conversion of the security as a defense to the landlord's proceeding to dispossess. The trial court had determined that the landlord held the security as a pledge and that the use of the fund constituted a conversion. The Appellate Term reversed, dismissed the counterclaim, directed final order and judgment for the landlord and said: " We think the provisions of the lease unquestionably show that the parties did not intend that the landlord should hold the security intact, but rather that it should have the right to use it — at least until six months before the end of the term. Not only was the landlord required to pay $4\frac{1}{2}\%$ interest on the security, but the lease provided that six months before its termination the landlord should deposit ' in escrow with a trust company or savings bank the sum of money then on deposit with the landlord as security.' The lease is for twenty-three years and contains two options to the tenant of two additional terms of twenty-one years each. In view of all these facts it is evident that the parties making the lease intended the landlord to have the use of the security up to the time that it was required to place it in a bank. That time had not yet arrived. It could not therefore be held that the landlord was guilty of conversion of the security for having merely used it as it was permitted to do. There was therefore no defense to the landlord's proceeding. In view of the increasing number of appeals which involve the question of conversion by the landlord

of security deposited under a lease it is felt that an expression of opinion by this court as to its views on the subject might be of aid to litigants and to the lower courts, the appeals from which come here in the first instance. The relation in which the security is to be held is a matter of agreement between the parties. For instance, they might provide in the lease that the security is to be held in trust or in some fiduciary relation by the landlord. This might be done either by express language or by language which necessarily justifies the inference that such was the parties' intent. In such a case the use of the security by the landlord for his own purposes would amount to a conversion. If the lease, however, contains no such provisions, the relation existing will be deemed to be that of debtor and creditor. For instance, where the lease provides that the security has been deposited with the landlord for the faithful performance of the lease by the tenant and is to be returned to the tenant upon the expiration of the term, the landlord will be deemed to have the right to use the money and will not be guilty of conversion in so doing."

I am in accord with that decision and with the reasoning of the court in its opinion. In accords with the opinion of the Court of Appeals in *Sagone* v. *Mackey* (*supra*). It leaves the parties to the agreement which they make. If there be danger or risk contemplated in the use of the fund by the landlord, such danger or risk may be avoided by specific agreement of the parties aimed to protect the security from diversion or depletion. If the situation be so serious as is claimed by the appellant and if conditions be such that tenants are unable to protect themselves by agreements with landlords, remedial legislation may be sought similar to that recently obtained and enacted for the protection of laborers, materialmen and the like, under the Lien Law, by requiring building loan agreements and mortgages, and even conveyances, to contain clauses affecting such loans and purchase moneys with a trust to prevent diversion to the injury of laborers and materialmen. In the absence of such legislation, or of agreement by the parties, however, it is not the function of the court to legislate judicially or to make an agreement which the parties have not made. We have, therefore, in this case what appears to me to be by agreement of the parties, an ordinary relationship of debtor and creditor. Such being the case, the defense interposed by the tenant and his contentions in respect thereto on this appeal, are without merit.

Assuming, however, that a trust or fiduciary relationship did exist in this case by virtue of the lease between the parties, nevertheless, the proof adduced at the trial is sufficient to sustain a determination by the trial court that there was in fact no conversion.

Such a decision would not be against the weight of evidence and would not be interfered with by this court. When the deposit was made, it was deposited by the landlord to its account in its bank. Such deposit must have been in the contemplation of the parties when the check was given to the landlord. By making the deposit in the form of a check the tenant must necessarily have contemplated its deposit in the landlord's account for collection and its being placed and kept in the bank for the landlord's account. That alone did not establish a commingling of the fund, burden of proof as to which was on the tenant; and if it did may well be held to have occurred with the implied consent of the tenant. (*Frost* v. *Paulster Realty Corp.*, 138 Misc. 597.) The security remained on deposit in the landlord's account in his bank and when the bank was subsequently closed by the State Banking Department, it was withdrawn and kept in a separate envelope. Surely commingling of the specific fund with other deposit funds in one or more envelopes would not constitute a conversion. It was produced by the petitioner both at the examination before trial and also at the trial.

I am not impressed with the argument of the tenant that the currency thus produced was of an issue subsequent to the time of the making of the lease. The original deposit was not in currency but by check; and even assuming the landlord to have been a trustee as to the deposit, he was not required to produce the identical currency given him. (*Sagone* v. *Mackey*, *supra; Euclid Holding Co.* v. *Kermacoe Realty Co.*, 131 Misc. 466.)

Hence, if there were a commingling of the funds, the proof adduced was such as to justify a decision by the trial court that there had been no use of the same by the landlord for his own private purposes and likewise that the fund had not in fact been depleted. Indeed, even had the proof established such use by the landlord, it would not necessarily constitute conversion by him if he retained in some account sufficient funds to meet his obligations (*Sagone* v. *Mackey*, *supra); or if he restored the entire amount of the security following its use by him, he would then still be entitled to claim the rent. (*Euclid* v. *Kermacoe Realty Co.*, *supra.*) Therefore, a mere commingling of the funds, or a diversion of the same or part thereof to private use by the landlord in this case (assuming that such has been proven), was not such a conversion as would entitle the tenant to the relief sought in view of the proof that the landlord kept sufficient funds available to meet his obligations, or restored the security in full. In those respects, the decision of the trial court is supported by the evidence, is not against the weight thereof and will not be disturbed on this appeal.

In that connection may be considered two further points raised by the appellant. He asserts error in the exclusion of testimony of an employee of the Federal Reserve Bank as to date of issue of bills produced by the landlord as representing the deposit. This was immaterial because the landlord was not required to keep intact and to return the exact same currency he received. The appellant also asserts that testimony was erroneously excluded, offered by an employee of the State Banking Department, with respect to the records of the landlord's bank resulting, it is assumed, from the examination of that bank following its closing by the Banking Department. If the ordinary relationship of debtor and creditor only existed between the landlord and the tenant as to the deposit by virtue of the terms of the lease, as I have already indicated from my opinion in this case, such testimony was immaterial. If it was offered as tending to show that the intent of the parties was to create a trust or fiduciary relationship in that respect, we may assume such relationship for the purposes of argument, and the order and judgment may nevertheless be affirmed because of the sufficiency of proof to justify a determination by the trial court that there was in fact no conversion. And finally, if the proof tendered was aimed to show use of the fund by the landlord for his own purposes, such use may for the purpose of argument, be conceded and still again the judgment be sustained upon the proof adduced by the landlord of his maintenance of the fund or of its restoration. But I am also in accord with the landlord's contention and with the ruling of the trial court that the witness was not competent so as to permit the receipt in evidence of the testimony and exhibits offered by him.

Compliance must have been shown with the requirements of section 374-a of the Civil Practice Act, concerning records made in the usual course of business. To justify the receipt for such records in evidence the trial court is required to find that they were made in the regular course of the business and that it was the regular course of such business to make such records at the time or within a reasonable time thereafter. To be sure, that statute was enacted for the purpose of bringing the rules of evidence up to date and on a par with modern mercantile and industrial life. The purpose was to make the courts practical and the statute should be so construed as to give that purpose effect. (*Johnson* v. *Lutz*, 253 N. Y. 124.) But as the court said in that case, " it was not intended to permit the receipt in evidence of entries based upon voluntary hearsay statements made by third parties not engaged in the business or under any duty in relation thereto." Obviously, the witness in question was not employed in the bank

when the records in question were made and had no personal knowledge of the same, whether they were made in the regular course of business of the bank or whether it was the regular course of such business to make such records at the time. His testimony, therefore, was necessarily hearsay and failed to bring the offer within the meaning of the statute. (*Mengel* v. *Larkin*, 230 App. Div. 783.) The exclusion of his testimony and of those records, therefore, was not prejudicial error requiring reversal.

Lastly, the appellant assigns error in the exclusion from evidence of the examination of the landlord before trial. At the time of the taking of the examination, the landlord objected upon the ground that it was not permissible under the authorities.

It was stated upon the argument of the appeal that the authorities not being available to counsel at that time, a stipulation was entered into which is a part of the record stating the landlord's objection and consenting that the objection might be raised and decided at the trial. An examination before trial may not be had in a summary proceeding. (*Dubowsky* v. *Goldsmith*, 202 App. Div. 818.) The subsequent amendment of the statute by which a landlord in a summary proceeding is permitted to take judgment for rent in arrears, does not to my mind affect the rule enunciated in that case. It was there stated that the purpose of the statute permitting summary proceedings was to obtain speed, promptness and certainty of decisions in such cases and that motions to examine before trial, having the necessary effect of delaying the proceedings, were hostile to the very character and object of the remedy which the Legislature had provided. The amendment permitting judgment for unpaid rent does not change the character of the proceeding. It still remains a summary proceeding, provided for the purpose of obtaining speedy relief and should not be thus delayed. The exclusion of the examination before trial from evidence was, therefore, proper.

Order and judgment appealed from, affirmed, with costs.