MORRIS LEVINSON and Others, Appellants, Respondents, *v.* BERNARD SHAPIRO, Respondent, Appellant.

First Department, April 21, 1933.

*Isidor Wels* of counsel [*Moss, Marcus & Wels,* attorneys], for the landlords.

*Herman C. Pollack,* for the tenant.

SHERMAN, J. The testimony shows that there was a prior lease of these premises and that when such lessees turned over the remainder of the term of their lease to Shapiro, the tenant here, he entered into a written lease with the landlords on August 13, 1931, for a term expiring on January 31, 1933, at an annual rental

of $2,000 payable in monthly installments. The only lease in the record before us is the last mentioned one, which contains the following pertinent clauses:

" 15th. The Tenant has this day deposited with the Landlord the sum of One Hundred and Sixty-six and 67/100 ($166.67) Dollars as security for the full and faithful performance by the Tenant of all the terms and conditions upon the Tenant's part to be performed, which said sum shall be returned to the Tenant after the time fixed as the expiration of the term herein, provided the Tenant has fully and faithfully carried out all of the terms, covenants and conditions on his part to be performed.

" 16th. That the security deposited under this lease shall not be mortgaged, assigned or encumbered by the Tenant without the written consent of the Landlord."

Notwithstanding the acknowledgment of the receipt from Shapiro of that sum in the security clause in this lease, the proof is that, actually, this amount had been received by the landlords from the prior tenants, and that the landlords had deposited the same in their current bank account.

The record further shows that at one time (whether during the earlier or later lease does not clearly appear) the landlords fell into financial difficulties, at which time they had sums in this bank account considerably in excess of the security money and all these moneys were paid out to their creditors together with other moneys, the landlords then also having what were termed additional " frozen assets." Having appeased their creditors, they continued in business and at the time of trial their bank account, wherein the security had been deposited originally, amounted to the sum of about $1,200.

The trial court upon motions for a directed verdict by both parties granted recovery to the landlords of two months' rent due January 1, 1932, and February 1, 1932, and thus disposed of all issues of fact in their favor. The judgment entered thereon has been modified at the Appellate Term, which allowed the tenant's counterclaim for the amount of the deposit upon the theory that the landlords had converted it. The correctness of this conclusion is the only question here for review.

This ruling of the Appellate Term deprives the landlords of the security which under the lease they were permitted to hold until its expiration and to which the tenant could become entitled only after the expiration of the term and his faithful performance of his obligations. (*Rosenfeld* v. *Aaron*, 248 N. Y. 437, 441.) This result, so favorable to the tenant, is defended notwithstanding that the judgment as entered determined that he had broken the lease

about one year before its expiration; the landlords under the dispossess judgment herein now have neither a tenant nor the security for which they stipulated.

The intent of the parties must govern and it is to be gathered from the language used, the surrounding circumstances, the situation of the parties and the subject-matter of the contract, viewed in the light of the evidence. (*Mascioni* v. *Miller, Inc.*, 261 N. Y. 1, 5.) No hard and fast rule can be laid down to govern the respective rights and liabilities of a landlord and tenant with respect to the use or non-use of moneys paid over to the landlord as security. The parties can stipulate that the deposit be held intact and unused as a fund to be set apart; or they may fail to do so. Here, they have not so contracted and the circumstances of the transaction as well as the language of the lease itself do not indicate an intention that this small sum was required to be kept in a separate fund. The finding by the trial justice upon this point should dispose of the appeal from the judgment rendered by him.

We are told that the fact that the landlords were not required to pay to the tenant interest on this small sum is conclusive evidence that they were not given the right to use these moneys, on the theory that if the landlords had been required to make such interest payment, the contracting parties must have intended that they could use the moneys so as to earn the interest which was to be paid to the tenant. The absence of this provision for interest is relied on as indicating an intent that the landlords may not use the fund. To my mind, that circumstance is not controlling in determining whether the deposit be actually a trust fund (*Matter of Banner*, 149 Fed. 936); for the parties might have stipulated that the landlord should segregate and hold the money, and yet pay to the tenant interest (even though the moneys in the hands of the landlords earned none) by way of recompense to the tenant for his deprivation of the use of the moneys. The nub of the matter is that if the parties had desired to restrict the landlord in the use of the moneys, they would have so provided by appropriate language. This was done in *Matter of Atlas* (217 App. Div. 38) where the deposit was the sum of $5,000, which was to be held in escrow by the lessors; the record there contains a stipulation that one of the purposes of that arrangement was to protect the tenant from loss through any future bankruptcy of the landlords. There, expression was given to the intent of the parties in the lease itself and furthermore a special receipt was delivered to the tenant when that sum of $5,000 was paid to the landlords wherein it was again provided that the sum must be held in escrow.

The counterclaim here under review cannot be sustained except

by holding that the landlords at no time had the right to use the security, for there is actually a dearth of proof that their bank account was depleted below the amount of the deposit during the term of this lease, and it is undisputed that at the time of the trial the landlords' bank account was more than sufficient to pay this amount.

The Appellate Term, Second Department, expressed the correct view in *Mendelson-Silverman, Inc.,* v. *Malco Trading Corp.* (146 Misc. 215; affd., 238 App. Div. ——), where it is stated (p. 216): " The relation in which the security is to be held is a matter of agreement between the parties. For instance, they might provide in the lease that the security is to be held in trust or in some other fiduciary relation by the landlord. This might be done either by express language or by language which necessarily justifies the inference that such was the parties' intent. In such a case the use of the security by the landlord for his own purposes would amount to a conversion. If the lease, however, contains no such provisions, the relation existing will be deemed to be that of debtor and creditor. For instance, where the lease provides that the security has been deposited with the landlord for the faithful performance of the lease by the tenant and is to be returned to the tenant upon the expiration of the term, the landlord will be deemed to have the right to use the money, and will not be guilty of conversion in so doing."

In *Haskel* v. *60 West Fifty-third St. Corp.* (231 App. Div. 800), affirming the Appellate Term and the Municipal Court (138 Misc. 595), a similar conclusion was reached where it was held that the intermingling of the security by the landlord with his own funds was not a conversion, there being no explicit agreement forbidding such use. Like result has been attained in a number of somewhat analogous cases. (*Messinger's Cloaks & Suits, Inc.,* v. *C. & L. Lunch Co., Inc.,* 236 App. Div. 836; *Goodman* v. *Schached,* 144 Misc. 905; *Frost* v. *Paulster Realty Corp.,* 138 id. 597, 600; *Matter of Banner,* 149 Fed. 936.) In the *Banner* case it was held by Judge Hough in the United States District Court for the Southern District of New York that the deposit of $5,000 with the landlord, under a lease containing a security clause very similar to the one in suit, created the relation of debtor and creditor only as between the parties with respect to that sum, even though the lease there called for the payment by the landlord to the tenant of interest on the deposit.

In Tiffany on Landlord and Tenant (Vol. 2, § 323) the rights and obligations of the parties with respect to the deposit are clearly described: " In some places, particularly in the city of New York, lessors occasionally require the lessee, at the time the lease is made,

to ' deposit ' a certain sum of money with the lessor to secure the payment of the rent, and occasionally, the performance of other covenants entered into by the lessee. Such a deposit is, in reality, it seems, a loan by the lessee to the lessor, to be returned to the latter, either by applying the amount so deposited on the rent or particular installments of the rent, or by applying it in satisfaction of claims for damages from breaches of other covenants, if it is agreed that it may be so applied, or by repaying, at the end of the term, the amount deposited, if all claims of the lessor which it was intended to secure are otherwise satisfied. Such a deposit does not create a lien in favor of the lessor, since the lessor obtains the actual ownership of the money and the lessee is divested thereof."

In origin the security stipulation found in leases was for the benefit of the landlord and, generally speaking, it was deemed unnecessary to insert language to protect the tenant because the financial standing of the landlord ordinarily was a sufficient guaranty of the return to the tenant of the deposit at the expiration of the term. The ownership of the realty was in itself an assurance. During the present shrinkage in realty values in New York city, the financial stability of the landlord has in many instances been weakened and thus a number of cases have come into court recently in which this question has arisen. We may not rule that from the mere deposit itself such an obligation arose as would make the landlord a tort feasor if he failed to hold the money in a separate fund, as though a trust relationship had existed; a conversion would then occur when the moneys deposited were mingled with the lessor's own funds. Since under the stipulations in the present lease the relationship of the parties was purely that of debtor and creditor (*Sagone* v. *Mackey*, 225 N. Y. 594, 599), there could be no conversion. (See *Pierpoint* v. *Hoyt*, 260 N. Y. 26, 29.)

For these reasons we conclude that the determination of the Appellate Term should be reversed, with costs in this court and in the Appellate Term to the landlords, appellants, and the judgment and final order of the Municipal Court of the City of New York should be affirmed.

FINCH, P. J., MERRELL and O'MALLEY, JJ., concur; TOWNLEY, J., dissents and votes for affirmance.

Determination of the Appellate Term reversed, with costs in this court and in the Appellate Term to the landlords, appellants, and the judgment and final order of the Municipal Court affirmed.