THE PEOPLE OF THE STATE OF NEW YORK, on the Complaint of JEANETTE HARRIS, Plaintiff, *v.* SAMUEL HOROWITZ, Defendant.

City Magistrates' Court, City of New York, Borough of Manhattan, Second District, January 12, 1931.

*Thomas C. T. Crain, District Attorney [LeRoy Mandle, Deputy Assistant District Attorney, on the brief], for the People.*

*Joseph J. Bernstein, for the defendant.*

RUDICH, J. The defendant is charged with having committed the crime of grand larceny. The facts, most of which were stipulated at the hearing, are as follows: The defendant is the secretary of Paramount Spa, Inc., hereinafter designated as the corporation; on August 27, 1930, the corporation, then the lessee of certain premises in the borough of Manhattan, sublet a part of said premises for a term of five years to Jeanette Harris, the complainant. The lease contained the usual " security " clause under which the tenant was to deposit with the landlord $2,500 as security for her faithful performance of the covenants and conditions of the lease, and if these were performed, the security was to be applied to the payment of the rent for the last months of the term. It was agreed that the tenant should pay $1,200 of this security at once and the balance in thirteen monthly installments of $100 each. The installment of $1,200 was paid in the form of a cashier's check, drawn to the complainant's order, and indorsed by her. That check was received by the corporation, indorsed in the corporation's name by this defendant as secretary, deposited by it in its own bank with the other funds of the corporation, and the proceeds used for various corporate purposes. After the complainant had been in possession of the premises for about two months, dispossess proceedings against the corporation for non-payment of rent, to which proceedings this complainant was made a party, resulted in the dispossessing of this complainant along with other subtenants. She thereupon demanded the return of the $1,200, and, failing to receive it, she instituted this charge of grand larceny against the defendant. This presents the interesting and important question

whether a lessor in dealing with the security as this lessor had done, commits embezzlement with respect thereto — interesting because exhaustive search has failed to disclose any reported case discussing the question, and important because of the increasingly large number of lessees who find themselves in similar situations.

The special form of larceny described as embezzlement was not known at common law. This was because, to constitute larceny, the taking had to be unlawful; if the property was lawfully obtained, the subsequent failure to account for or return the property constituted merely a breach of trust punishable only in a court of equity as a contempt of court. (3 Stephen Hist. Crim. Law of England, 121 *et seq.*) The Legislature, however, may make certain acts criminal which before were not so; and that power is not limited except in so far as it is restrained by guaranties and provisions in the Constitutions of the State and of the United States. (*People* v. *West*, 106 N. Y. 293; *People* v. *Gillson*, 109 id. 389.) Since acts of embezzlement, as we now know them, result in depriving innocent persons of their property, it was obviously within the province of the Legislature, acting under its broad police powers for the prevention of fraud, to declare such acts criminal, and thus, step by step, the laws against embezzlement, the first of which were enacted at the beginning of the nineteenth century, were developed and expanded to their present state. They are now contained in subdivision 2 of section 1290 and in section 1302 of the Penal Law. That part of section 1290 which is pertinent here reads as follows: " A person who   *   *   *

" 2. Having in his possession, custody, or control, as a bailee, *   *   *   trustee,   *   *   *   or as a person authorized by agreement,   *   *   *   to hold or take such possession, custody, or control, any money,   *   *   *   appropriates the same to his own use,   *   *   *   steals such property, and is guilty of larceny."

That part of section 1302 which is pertinent here reads as follows: " A person acting as   *   *   *   trustee of any description, appointed by a deed, will, or other instrument   *   *   *   who *   *   *   appropriates to his own use   *   *   *   any money, *   *   *   in his possession or custody by virtue of his office, employment, or appointment, is guilty of grand or petit larceny in such degree as herein prescribed with reference to the amount of such property   *   *   * "

Applying the statutes to the facts in the case at bar, the question narrows itself down to this, does a landlord, with respect to security under a written lease, come within any of these designations of the Penal Law? If not, then this proceeding must fail.

In civil suits between landlord and tenant based on the disposal of security, we note a gradual elevation of standards required of lessors. Until the decision in *Degnario* v. *Sire* (34 Misc. 163), decided by the Appellate Term in the First Department in 1901, it was generally assumed that the relationship was merely that of debtor and creditor. In that case, for the first time, a landlord who failed to return the security after eviction of the tenant under foreclosure of a prior mortgage was declared to have converted the money and to have become a tort feasor. Said the court: "Assuming, however, that the complaint was to be regarded as one in conversion, the uncontradicted evidence showed that the defendant did convert the money. The $500 was deposited for a special purpose. The title did not pass to the defendant, and he was bound to hold the money and return it when the purpose for which it had been deposited had been answered. The mortgage existed at the time the lease was given, and when it was foreclosed, and the premises sold, there was a breach of the covenant for the quiet enjoyment of the premises, and the defendant was bound to return the money on demand; when he refused to do so, he was guilty of a conversion of the $500."

In *Matter of Atlas* (217 App. Div. 38) the Appellate Division in the Fourth Department went a step further, holding that a tenant need not wait until he is evicted before asserting his rights with respect to the security. In effect it declared that when a lessor mingles the security with his other money and thereafter depletes the combined funds to an amount below the original sum deposited with him by the lessee, there is at once a *pro tanto* conversion by the lessor; and the lessee, though remaining in possession of the demised premises, may set off, as against the lessor's claim for rent, the amount of the security thus converted. While the opinion of the court did not go so far as to state that the landlord becomes the trustee of the tenant with respect to the security, some commentators construed the decision as tantamount to that declaration. Professor Wormser, in an editorial in the New York Law Journal of October 5, 1926, said: " The learned court's decision, as respects the relationship between a landlord and tenant in reference to the funds placed in the landlord's hands as security, is sound, and gives to the lessee the full protection needed, as well as amply protecting the landlord. It would seem proper, indeed, that, inasmuch as the landlord is in effect holding the deposit as trustee for the tenant, he should in no case be allowed to put the security funds in his general account, but should be restricted to keeping the funds either in a special account or to investing the funds in such securities as those in which trustees are authorized to invest trust funds."

Later the Appellate Term in the First Department, in *Madison Realty Co.* v. *Weiss* (133 Misc. 318) intimated that it would be possible to construe the relation " as that of a trustee or *quasi* trustee." In the very recent case of *Frontenac Hotel Co.* v. *Schwartz* (228 App. Div. 790) the Appellate Division in the Second Department followed the *Atlas* case even so far as to sustain a complaint for conversion not only as against the landlord corporation but also as against the officers who, as such, had acted for the corporation in the conversion.

This is as far as the courts in this State have gone. May we extend the principle of these cases, and say that this relationship of the landlord toward the tenant with respect to the security makes him a " trustee " or " a person authorized by agreement " as defined in section 1290, or " a person acting as trustee of any description, appointed by a deed, will or other instrument " as defined in section 1302? To answer that question, it is not necessary to go into an extended examination into the various kinds of trusts and trusteeships. Suffice it to say that throughout all the cases that discuss this comparatively new crime of embezzlement there runs the underlying thought that there must be a breach of trust to constitute the crime. " The essence of the crime of larceny involving embezzlement is breach of confidence " is the way the court expressed it in *People* v. *Meadows* (136 App. Div. 226, 235). While it is somewhat difficult to draw, with exact precision, the line of demarcation between acts punishable as crimes under the embezzlement statutes and those that may not be embraced by them, I hold that, since the fiduciary relationship is entirely absent, the landlord is not the trustee of the tenant as contemplated by these provisions of law. True, the landlord holds the money for the tenant and may have to return it intact, but his holding is coupled with an interest, an interest that may ripen into a right upon the happening of certain contingencies specified in the lease. In the ordinary relation of trustee and *cestui que trust* the former has no such interest, contingent or otherwise. If, in civil suits between the parties, the landlord is sometimes regarded as a sort of trustee for the tenant, that relationship has been superinduced upon him by operation of law as a matter of equity and not because he was " appointed " as such when the lease was executed. As the Court of Appeals phrased it in *People* v. *Epstein* (245 N. Y. 234), to be regarded as a " trustee " within the meaning of these embezzlement statutes, he must be " a person in whom a trust or confidence had voluntarily been imposed and by whom it had voluntarily been accepted." Tested by these standards, the landlord falls short of being a trustee.

Furthermore, a calm consideration of what the defendant did must inevitably lead to the conclusion that the criminal intent was absent in this case. In the commingling of the security with the other funds of the corporation there was no conscious and wicked purpose to defraud. An act may be unauthorized and illegal, and the doing of it may subject the perpetrator to civil liability not dischargeable even in bankruptcy; it may be unconscionable and not in conformity with the moral law — all this may be true, yet the act may not be one that is legally wicked and criminal, subjecting the offender to imprisonment. Judged by a moral code or by rules of ethics, what this defendant did was wrong, but we cannot override the ordinary presumption of innocence and reject a construction of the defendant's conduct which accounts for all the circumstances proved without imputing crime.

One more point remains to be considered. It may be urged that even if the landlord is not a trustee, he is nevertheless "a person authorized by agreement," as defined by section 1290. With that contention I cannot agree. It is obvious that the person intended by that designation is one who holds money as a stakeholder, or in escrow under a special agreement for that purpose, and not one who holds it as a party to a lease in which the security clause is merely incidental to the main agreement for the letting of the premises.

So far as the legislative intent is concerned, it was within the province of the Legislature, as stated above, to enlarge the class of persons under either of these sections of the Penal Law so as to include landlords holding security of their tenants. It did not do so; but courts should not be swayed by considerations of public policy to read into our statutes something that the Legislature could have included therein but did not. That the law-making body has been cognizant of the need of some remedial legislation on the subject is evident from its enactment, in 1924 (Laws of 1924, chap. 625), of section 1302-a of the Penal Law, which, however, does not reach a situation such as is here presented. That it would have been easy in explicit terms to stamp the landlord as the trustee of these funds may be seen by referring to section 1311 of the Penal Law. That provision declares in effect that the seller of lots to be paid for in installments of $100 or less holds such installments "as bailee and trustee for the special purpose of and until due delivery of deed or title pursuant to such promise of agreement." Thus, in language so plain that it cannot be evaded, a relationship between vendor and vendee, hitherto purely contractual, is lifted to that of trustee and *cestui que trust*. What was done for the buyer of lots who pays for them in small install-

ments, expecting to get his deed at the end of the contract period, may also be done for the lessee who deposits security with his landlord in the expectation of getting it back at the end of the term; that protection, however, must be afforded by the Legislature, not by the courts.

Since I hold that the landlord's conversion of this fund did not constitute larceny or embezzlement, it is unnecessary to pass on the question as to whether this defendant may set up the corporate entity of the landlord as a defense to this prosecution against him as an officer thereof, under the ruling in *People* v. *Fleishman* (133 Misc. 288) and *People* v. *Shatzkin* (221 App. Div. 602).

For the reasons above stated, the defendant is discharged.