LORING M. HEWEN COMPANY, INC., Plaintiff, *v.* THIBAUT REALTY COMPANY, INC., and Others, Defendants.

CITY BANK FARMERS TRUST COMPANY, as Trustee under a Mortgage or Deed of Trust, Dated as of May 1, 1927, Made by 269 MADISON AVENUE, INC., Plaintiff, *v.* WILLIAM S. RAMSAY, JR., and Others, Defendants.

Supreme Court, New York County, February 25, 1935.

*Simpson, Thatcher & Bartlett* [*Richard Jones* of counsel], for the plaintiff, defendant, Loring M. Hewen Company, Inc.

*Menken, Ferguson & Hills* [*William Ferguson* and *Patrick J. Growney* of counsel], for the defendant Thibaut Realty Company, Inc.

*Mitchell, Taylor, Capron & Marsh* [*George S. Mittendorf* and *Edward E. Watts, Jr.,* of counsel], for the plaintiff, defendant, City Bank Farmers Trust Company.

*Samuel Hoffman* and *Marlowe & Hines* [*Charles D. Hoffman* of counsel], for the defendant Albert M. Ettinger.

ROSENMAN, J. On August 2, 1926, Ret Realty Corporation leased the premises 269–271 Madison avenue, New York city, to 269 Madison Avenue, Inc., hereinafter called the lessee, for a period of sixty-three years. In order to obtain funds to construct a new office building on the leased property, the lessee issued $950,000 principal amount of first mortgage leasehold bonds, payable in ten years and bearing six and one-half per cent interest. To secure payment of these bonds, the lessee executed a mortgage on the lease on May 1, 1927. The Farmers' Loan and Trust Company (now known as City Bank Farmers Trust Company) was designated as trustee in the mortgage. Of the original issue of $950,000 principal amount of bonds, $99,000 have since been retired, leaving a balance of $851,000 still outstanding. In the meantime, Ret Realty Corporation conveyed the fee to Thibaut Realty Company, Inc., hereinafter referred to as the landlord.

In 1931 the lessee defaulted on some of its covenants. At the request of a bondholders' committee formed the previous day, the trustee, on August 28, 1931, declared the principal amount of the bonds to be immediately due and demanded payment thereof. When the lessee failed to comply with the demand, proceedings were begun by the trustee for the foreclosure of the mortgage and the appointment of a receiver.

On September 9, 1931, there came on for argument the trustee's application for a receiver of the leasehold. In the meantime the bondholders' committee, which now represents approximately ninety per cent of the outstanding bonds, was attempting to make arrangements with the lessee in order to avoid the impending receivership. The trustee, at the request of the committee, adjourned its application for the appointment of a receiver from time to time.

Negotiations between the lessee and the bondholders' committee were finally consummated in the execution of a management or operating agreement on September 15, 1931. The trustee was not a party to that agreement, although it had knowledge of the negotiations and of the agreement itself.

The agreement provided that Loring M. Hewen Company, Inc. (which had previously acted as renting agent for the mortgagor), hereinafter referred to as Hewen, was to assume complete management and operation of the building for the lessee, and was authorized to pay over monthly to the trustee the proceeds from such operation in excess of the current obligations. Among the current liabilities were ground rent, taxes and water rates (which under the ground lease the lessee was obligated to pay), as well as the expenses of operating and managing the property. Specifically, the agreement provided: " 5. The agent [Hewen] shall on or before the 10th day of each month render to the Trustee under the aforesaid mortgage and deed of trust, a statement of all rents, income, revenue and other moneys collected, and disbursements made, with vouchers therefor, during the preceding month, and shall remit therewith to the trustee, as trustee under the said mortgage and deed of trust, any balance remaining. * * * Notwithstanding the foregoing, however, the agent may, to such extent as may be approved in writing by the representative or representatives of the committee acting for the time being, withhold from the trustee and retain on deposit in its account as agent hereunder, all or any part of the balance remaining after disbursements as aforesaid which the agent in its discretion may deem necessary or advisable to retain in such account against obligations or liabilities of the Company due or to become due for ground rent, taxes, water rates, and/or expenses

of operating and managing the said leasehold premises  *  *  *.
The agent is hereby authorized to pay all expenses of the leasing
of the property, also ground rent, water rents, taxes and insurance
premiums and to include the same as disbursements made from
the collections made by the agent. The agent shall be under no
duty or liability to make any disbursements except from rent,
income, revenue or other moneys collected by it hereunder."

By letter dated October 26, 1931, this operating agreement was
amended by an extension of its term and a provision that the
excess of monthly receipts over monthly disbursements " need not
be remitted " to the trustee " in its capacity as trustee under the
mortgage and deed of trust." The evident purpose of this modi-
fication was to confer upon the trustee express authority to apply
such funds as it deemed fit for the preservation of the leasehold.
The trustee took advantage of this authority by twice paying the
taxes. After the modification agreement of October 26, 1931, the
trustee withdrew its application for a receiver, without prejudice
to a renewal.

Hewen acted under these agreements until April 18, 1933, when
the relationship of landlord and lessee was terminated by summary
proceedings, as hereinafter set forth. During that period it ren-
dered various statements monthly to the trustee and remitted to
it certain sums from time to time, in accordance with the agree-
ments. Such sums included $3,640.48, allocated from the net
amount in the hands of Hewen to the period prior to September
1, 1931. Subsequent statements rendered to the trustee by Hewen
disclosed that Hewen, acting under instructions from the bond-
holders' committee, had paid directly to the committee some of
the net rents in its possession collected between October 1, 1931,
and April 1, 1933. On demand by the trustee, the committee
remitted to it these payments, amounting to $22,000, on May 15,
1933. Thereafter Hewen resumed payment directly to the trustee
on April 10, 1933. No rent accruing after April 18, 1933, was
collected by Hewen or is involved in either of these proceedings.

On June 1, 1932, upon the application of a judgment creditor of
the lessee, Albert M. Ettinger was appointed temporary sequestra-
tion receiver of that corporation. The receivership was made
permanent on August 23, 1932. Such receivership still remains in
force and effect, although no assets of the lessee have been actually
reduced to the possession of the receiver.

No rent has been paid to the landlord for part of the month of
December, 1932, and the entire months of January, February and
March, 1933. During December, 1932, however, the bondholders'
committee began to negotiate with the landlord for a reduction in

rent. Due to what the landlord has alleged to be procrastination and dilatory tactics on the part of the bondholders' committee, these negotiations dragged on for several months and finally came to naught. As a result, there was a long delay in the institution of dispossess proceedings by the landlord against the lessee.

On March 30, 1933, summary proceedings were finally commenced against the lessee by the landlord, by the service of a precept and petition. On April 12, 1933, a final order in favor of the landlord was entered, together with a money judgment of $39,291.67. This judgment covered the unpaid balance of rent due December 1, 1932; rent for the months of January and February, 1933; real estate taxes for the second half of 1932, plus the interest on such rent and taxes. No demand was made in the petition for the rent due March 1, 1933, and, therefore, such sum was not included in the final order. On April 18, 1933, a warrant was issued, ousting the lessee from possession.

Two proceedings are now before the court. The first is brought by the trustee against the named defendants for instructions from the court as to the disposition of the funds now in its hands, consisting of the moneys paid over to it by Hewen. The trustee, the receiver and the landlord each claim to be entitled to this fund. The other proceeding is an interpleader proceeding brought by Hewen relating to the funds in its hands, made up of rents collected from subtenants, which it has not turned over to the trustee. The landlord, the trustee and the receiver each demand this money also; and as a stakeholder, Hewen asks for instructions as to its disposition. By consent these two proceedings have been tried together as one, and are to be disposed of as one.

The amount now in the possession of the trustee is the sum of $48,949.82; the amount in possession of Hewen is $3,102.50. The landlord agrees that it has no claim to the sum of $3,640.48, paid by Hewen to the trustee from rentals received, which became due and payable up to and including September 1, 1931, by reason of the fact that such rentals accrued prior to the execution of the management agreement.

In the determination of the issues here presented, distinction must be made between the money in the possession of the trustee and that in the possession of Hewen.

The moneys paid to the trustee pursuant to the management agreement of September 15, 1931, and the letter of October 26, 1931, were not paid to it as a mere depository. The letter of October 26, 1931, was executed for the purpose of making certain that the trustee would have the power to pay the real estate taxes from the rent collections. The trustee was a creditor of the lessee.

It was a creditor, entitled to the payments set forth in the trust indenture for the benefit of its bondholders. As a trustee for its bondholders, it received from time to time the payment of these debts which were due it. As soon as the money was received by it, the money became impressed with a trust solely in favor of the bondholders, and not in favor of any of the lessee's other creditors or of the landlord.

The trustee has never expressly assumed possession of the mortgaged property or attempted to manage and operate it. Nor can any of the acts of the trustee be deemed to be an assumption of the possession, management or operation. It was not a party either to the agreement of September fifteenth or to the modification of October twenty-sixth. In fact, it had definitely refused to become a party to either for the reason expressed by it that it was unwilling to do anything which might possibly give rise to an inference that it was taking possession. The trustee insisted upon remaining aloof from the entire situation unless a receiver was appointed. By no construction can the management agreement of September fifteenth be construed as an assumption of possession by the trustee. The agreement made Hewen the agent of the lessee to collect the rent, and to manage and operate the property. The agent was directed to render to the trustee a statement of the income and disbursements and to pay over to the trustee any remaining balances. The agent was authorized, however, with the approval of the bondholders' committee, to withhold from the trustee such sums as it deemed necessary, to pay ground rent, taxes, etc., and was authorized to deduct such disbursements from the collection of rent. Specific provision was made to the effect that employees in the building should be deemed to be employees of the lessee. The agreement was to terminate as soon as a receiver was appointed on application of the trustee. No approval on the part of the trustee was necessary for any of the acts to be done under the management agreement. The only action which the trustee took in connection with the execution of the agreement was to desist in fact from pressing its application for a receiver. It did not, however, obligate itself even to the extent of such forbearance. In no way, therefore, did the trustee take possession or exercise any dominion over the property itself.

It is urged by the landlord that the acts of the bondholders' committee in negotiating with the landlord for the reduction of rent constitute an equitable estoppel, which entitles the landlord to the rents in the possession of the trustee. The argument is made that the landlord desisted from commencing summary proceedings in December, 1932, for non-payment of rent, because of

the pending negotiations with the bondholders' committee, during which there was always an understanding that the rent would be paid. These negotiations continued for several months, during which time no rent was paid. The landlord permitted the lessee to remain in possession in spite of the non-payment. It was not until the March rent had become due that the landlord did, in fact, commence summary proceedings. It now urges that the acts of the bondholders delayed the summary proceedings to the detriment of the landlord, who relied upon the pending negotiations for payment of the rent and accordingly took no steps to prevent Hewen from paying over to the trustee the rents collected from the subtenants.

No grounds are shown for invoking any principle of equitable estoppel.

The trustee is the representative of all the bondholders, and not merely of those bondholders who had become depositors with the bondholders' committee. Those who had not deposited with the committee cannot, in the absence of some statutory provision, be bound by the conduct of those who did. While it is true that the committee represented a great majority of the bondholders, there was a substantial number who had not subscribed to the deposit agreement, and who, therefore, cannot, in any sense, be prejudiced by the acts of the committee.

Differentiation cannot be made in the distribution of this fund between depositing bondholders and non-depositing bondholders. There is the practical difficulty of attempting different treatment for different classes of bondholders out of one fund, particularly since the number of depositing bondholders and the amount of deposited bonds varied considerably from time to time during the period of negotiations.

There is also the objection that the pleadings in the proceedings give no indication that an attempt would be made to distinguish between classes of bondholders. If the pleadings had given notice of such intention, the different classes of bondholders might have appeared by separate counsel to protect their respective rights.

The trustee was not itself at any time a party to the negotiations between the bondholders' committee and the landlord. It did not even participate in these negotiations. The most that can be said of the trustee in connection with them is that it merely had knowledge in a general way of what was going on. The trustee did not prevent or seek to prevent the landlord from commencing and prosecuting dispossess proceedings. It had a right, and, indeed, a duty to its bondholders to interpose the answer which it did in the summary proceedings eventually brought, in order to put the landlord to its proof.

The negotiations with the bondholders' committee did not prevent the landlord from commencing summary proceedings. There is no reason why the landlord could not have prosecuted the summary proceedings to conclusion, and delayed the issuance of the warrant as long as it wished, in order to consummate the pending negotiations with the committee. If, instead of exercising this diligence, it was willing to permit its rights to be jeopardized without obtaining some assurance that the rent would be paid, it cannot now complain as against the trustee, which did not participate in the negotiations and which is the representative of all the bondholders, including those not connected with the committee.

The payments by Hewen to the trustee did not constitute a preference which should be set aside in favor either of the landlord or of the receiver in sequestration for the benefit of all the general creditors of the lessee. Even assuming that the evidence disclosed all the facts necessary to create a preferential payment under section 15 of the Stock Corporation Law (which is denied by the trustee), nevertheless the transfer of the money to the trustee here would not constitute a preference. The payment to the trustee was a payment to a creditor. It was on account of a debt, however, which was secured by the mortgage upon a leasehold, for the payment of which the rents and income from the subtenants had been pledged by the trust indenture. The income from the leasehold was, in fact, a part of the security included in the mortgage of the leasehold and originally agreed upon, when the mortgage was executed. The payment to the trustee of these rents was not something new which was given to the trustee. It was merely handing over into its possession what was rightfully its own, in the event of a default, by the terms of the original agreement. (*Doehler* v. *Real Estate Board of New York Bldg. Co.*, 150 Misc. 733, 746; *Finance & Guarantee Co.* v. *Oppenheimer*, 276 U. S. 10; *Thompson* v. *Fairbanks*, 196 id. 516.) There is, therefore, no question in this case of setting aside a preferential payment.

It is urged that the landlord is entitled to recover the moneys collected by Hewen from the subtenants, on the theory of *Lawrence* v. *Fox* (20 N. Y. 268). The argument is made that by the agreement of September 15, 1931, Hewen contracted to manage the property for the lessee, to pay the ground rent to the landlord, and after such payment to turn over the balance to the trustee. The claim is made that, under such arrangement, the landlord is the beneficiary of the promise by Hewen to pay the ground rent to the landlord from the rents collected from subtenants.

There is no validity to such claim as against the trustee. It has made no promise to pay the rent, or any part of it, to anybody.

Nothing contained in the trust indenture can be construed as any such promise on the part of the trustee. Nor can one be implied from the execution of the management agreement of September 15, 1931. The trustee was not a party to it and did not agree to make any payments pursuant to it. Furthermore, the principle of *Lawrence* v. *Fox* is not applicable, because neither the trust indenture nor the management agreement of September fifteenth was made for the benefit of the landlord. They were made solely for the benefit of the bondholders and the lessee. The landlord can accordingly find no support in the *Lawrence* v. *Fox* doctrine. (*Durnherr* v. *Rau*, 135 N. Y. 219; *Case* v. *Case*, 203 id. 263; *Beveridge* v. *N. Y. E. R. R. Co.*, 112 id. 1, 26; *Embler* v. *Hartford Steam Boiler Ins. Co.*, 158 id. 431, 436; *French* v. *Vix*, 145 id. 90; *Seward* v. *Huntington*, 94 id. 104; *Garnsey* v. *Rogers*, 47 id. 233; *Vrooman* v. *Turner*, 69 id. 280.)

Nor can valid claim be made by the landlord, on this theory, to the funds still in the possession of Hewen. The contract of September fifteenth contains no promise by Hewen to make such payments to the landlord. It permits and authorizes Hewen to make such payments before turning over the excess to the trustee, but beyond that, it does not obligate Hewen personally to make such payments from the rents received. Furthermore, as indicated above, a necessary element for the application of the principle of *Lawrence* v. *Fox* is lacking, namely, that the contract shall have been made for the benefit of the landlord. Analysis of the management agreement discloses no intention to include the landlord within the benefits of the agreement except only incidentally. The agreement was essentially directed towards obviating the necessity of a receivership. The fact that the fund is now before the court for distribution cannot be urged as a reason for violating well-established and accepted principles of contract, to impose liability upon either Hewen or, more particularly, the trustee, in favor of the landlord, who was a total stranger to the agreement.

The landlord has not acquired any lien upon the fund by reason of the fact that it has paid the taxes on the fee of the real estate for the second half of 1932 and the first half of 1933. No equitable rights attach to the fund on the theory that the landlord has become subrogated to the lien of the city of New York to the extent of the taxes paid. Any lien which the city of New York may have is directed against the fee, and not against the leasehold. There is nothing which obligated the trustee, in fact or in equity, to pay any taxes. The fact that the landlord has paid them does not create any right in his favor against the rentals. The payment was obviously made by the landlord for his own benefit, and not for the benefit of the trustee.

Even where an insolvent lessee has actually agreed to pay taxes and has failed to do so, the lessor by paying the taxes does not obtain any priority over other general creditors of the lessee. (*Hardeman* v. *Hendrix*, 29 F. [2d] 738.) The principle is obviously clearer here, where there has been no such covenant or obligation to pay the taxes.

The landlord urges that the mortgage of the leasehold was tantamount to an assignment thereof to the trustee. It is argued that by reason of this assignment, the trustee assumed the obligations of the leasehold and, therefore, became bound to pay the rent. The law is to the contrary. The mortgagee did not take possession of the premises. He did not assume ownership of the leasehold assets *cum onere;* and, consequently, did not assume any liability for the payment of the rent prescribed. (*Walton* v. *Cronly*, 14 Wend. 63; *Tallman* v. *Bresler*, 65 Barb. 369; affd., no opinion, 56 N. Y. 635; *Century Holding Company* v. *Ebling Brewing Co.*, 98 Misc. 226; affd., 185 App. Div. 292; *Northwestern Mut. Life Ins. Co.* v. *Security Savings & Trust Co.*, 261 Fed. 575, 579; Thomas Mortgages [3d ed. 1914], § 165; Lewis Law of Leases of Real Property [2d ed. 1930], 296.)

The authority of *Rodack* v. *New Moon Theatre* (121 Misc. 63 [App. Term, 2d Dept. 1923]) to the contrary, based upon the assumption that a mortgage of a lease is a chattel, title to which passes immediately to the mortgagee, subject to defeasance by payment, is not binding upon this court by reason of the conflicting authorities above cited.

The trustee is, therefore, entitled to the funds now in its possession, subject, of course, to the terms of the trust indenture.

As to the funds remaining in the possession of Hewen, a different conclusion is reached. The money in its hands should be treated as if it were still in the possession of the lessee. Hewen is the agent of the lessee, who has funds in its possession which have not yet been turned over to the trustee. As to these, the trustee has no greater claim than has any other creditor. It is true that the funds which have already been turned over to the trustee by Hewen do not constitute a preferential payment, as hereinabove set forth. That does not mean, however, that the funds still in the possession of the insolvent debtor (lessee) should be turned over to the trustee. It is one thing to say that a creditor who has been paid a part of his debt should be allowed to retain such payment if it does not constitute a voidable preference; it is quite another thing to say that after a debtor has become insolvent and after its assets have been brought into a court of equity for distribution, such assets may be used to pay one creditor in priority to all others.

Therefore, the trustee has no greater right to this money than has the receiver in sequestration.

However, under well-recognized principles of equity, the landlord has a right to these funds paramount to the rights of general creditors. Where a lessee, as here, is insolvent, the landlord has an equitable claim to the rents in the possession of the lessee which have been collected from subtenants. This equitable claim is superior to the rights of any ordinary creditor of the insolvent lessee.

As was said in *Otis* v. *Conway* (114 N. Y. 13): " Rent is something which a tenant renders out of the profits of the land which he enjoys. Equitably, it is a charge upon the estate, and the lessee, in good conscience, ought not to take the profits thereof without a due discharge of the rent. [Citing cases.] * * * The creditors of an insolvent lessee can have no moral or equitable claim to the profits issuing from leased land, until after the landlord's claim for rent is satisfied." (See, also, 2 Story Eq. Juris. [14th ed.], § 926-g; *Riggs* v. *Whitney*, 15 Abb. Pr. 388.)

There is no question about the present insolvency of the lessee. A receiver has been appointed for it. As between the receiver and the trustee, the receiver would be entitled to the rents now in the possession of Hewen. If the receiver took them into his possession, the principle enunciated in *Otis* v. *Conway* (*supra*) would be applicable; and the landlord would be entitled to these rents. Therefore, in view of the presence in court of all of the claimants to the fund now available for distribution, the moneys now held by Hewen should be turned over directly to the landlord. The same disposition should be made of the notes and judgments in the possession of Hewen.

In so far as the cases of *Ginsburg* v. *Sherlock Realty Corp.* (221 App. Div. 586) and *Slowmach Realty Corp.* v. *Leopold* (236 id. 330) hold to the contrary, they must yield in authority to the Court of Appeals cases cited. A careful reading of these two cases, however, will disclose that in so far as the opinions relate to rents already collected and in the possession of the receiver, the language of the court in each case was *obiter dictum*.

The landlord lays claim in any event to rentals collected since March 30, 1933, the day summary proceedings were commenced by the service of a precept and petition. The theory of its contention is that the service of the precept terminated the lease relationship, and that any collection of rents by Hewen after that date was not authorized. In this the landlord is in error. It is not the service of a precept in summary proceedings which terminates the relationship of landlord and tenant. It is the issuance of the

warrant. (Civ. Prac. Act, § 1434; *Cornwell* v. *Sanford*, 222 N. Y. 248; *Van Vleck* v. *White*, 66 App. Div. 14, 17; *Giroux* v. *McCrea*, 204 id. 192, 195.) *Matter of Radway* (144 Misc. 352), if it is to be construed as holding that the relationship is terminated by the issuance of the precept, cannot be reconciled with the other authorities, and such holding will not be followed here.

Had any collection been made of rents accruing subsequent to April 18, 1933, the date of the issuance of the warrant, the landlord would clearly be entitled to them. The evidence is that neither Hewen nor the trustee is in possession of such funds.

Applications are now pending for the reduction of city taxes on the premises involved herein for the years 1931 and 1932. Certiorari proceedings have been brought with respect to these claims. Instructions have been requested of the court with respect to the disposition of any tax refunds, if and when they are paid as a result of such proceedings. The landlord has paid the taxes for the second half of 1932, and would, therefore, be entitled to one-half of any refund for that year, less one-half of the legal expense incidental to the refund. The trustee has paid the taxes for the second half of 1931 and first half of 1932 from the rents received by it under the management agreement. Any refund on either of these installments, less the incidental legal expense, should be turned over to the trustee to be held by it, subject to the trust imposed by the indenture.

Section 71 of the trust indenture provides for the compensation of the trustee. Such compensation is to be paid by the lessee to the trustee; but provision is made that in default of such payment, the trustee should have a lien therefor on the mortgage-pledged property and the proceeds thereof prior to the lien of the bonds and coupons issued hereunder. Obviously, by this provision, the trustee is entitled to be paid out of the income in its hands. The amount of such payment should be determined by a referee.

There is no provision, however, binding upon the landlord for the payment of any counsel fees or expenses on behalf of Hewen out of the funds in its possession. The application for the subjection of such fund to such payment is, accordingly, denied.