JULIAN J. DURAND, Landlord, *v.* FRANCES K. LIPMAN, Individually and as Executrix, etc., of JULIUS LIPMAN, Deceased, and Others, Tenants, etc., Impleaded with JULIUS GOLDSCHMIDT and Another, etc., Under-Tenants.

Municipal Court of New York, Borough of Manhattan, Second District, December 30, 1937.

*Mitchell, Taylor, Capron & Marsh* [*Eben E. Rand* and *Howard E. Thomas* of counsel], for the landlord.

*B. Arnold Chambers* and *Gerald Chambers, Henry, Meyers & Manne* [*B. Arnold Chambers, Gerald Chambers* and *Joel M. Lieberman* of counsel], for the Guaranty Trust Company and Charles L. Kellner, as executors, etc.

*Jack Norden, Jr.* [*Ferdinand I. Haber* of counsel], for Ferdinand I. Haber, individually and as executor, etc.

*Peter T. Kourides* [*Ferdinand I. Haber* of counsel], for Bertie S. Schwed, as executrix, etc.

*Emanuel Rackman* [*Emanuel Rackman* and *Bernard Fischman* of counsel], for William Pitt Mason, Jr.

*Sidney L. Nussenfeld*, appearing specially for the T. M. C. Realty Corporation.

GENUNG, J. This is a summary proceeding to recover possession of premises 99–105 Third avenue, Manhattan, New York city, for non-payment of rent, wherein the landlord also seeks judgment for the unpaid rent in the sum of $12,200 against various persons designated as " tenants " or " leasehold mortgagees."

In 1875 one Philip J. Seiter leased the premises in question from the landlord's predecessor in title for a term of twenty-one years, which lease provided for a renewal for a further term of twenty-one years.

One William Meissel, who had become possessed of an interest in the lease, died in 1884, leaving his wife, Mary, a life interest therein and devising the remainder to his three children, Belle Kellner, Jennie Stiefel and Adolph Meissel.

In 1896 that lease was renewed for a term of twenty-one years at a rental of $1,500 per annum, the tenants therein being "Frances K. Lipman, Simon Arendt, Caesar Casper and Abraham Cohen, as Executrix and Executors of the Last Will and Testament and Codicil thereto of Julius Lipman, deceased; Isaac' Marx, as sole surviving Executor of the Last Will and Testament of Rosalie Wittner, deceased, and Mary Meissel as sole Executrix of the Last Will and Testament of William Meissel, deceased." In that lease the landlord agreed that at the expiration of the twenty-one-year period he would *at his option* either pay for any dwelling erected on the premises *or* grant a new lease for a further period of twenty-one years.

Mary Meissel died in April, 1910, leaving a will appointing Henry B. Kellner and Ferdinand I. Haber her executors and trustees and creating a trust for her son Adolph Meissel. Said Adolph Meissel in July, 1910, transferred all of his interest in the leasehold to said "Henry B. Kellner and Ferdinand I. Haber, as executors and trustees by and under the last will and testament of Mary Meissel, deceased."

In 1917 the landlord herein exercised his option to "grant a new lease" in accordance with the provisions of the 1896 lease.

The "new lease" was made to Frances K. Lipman, as sole acting executrix of the last will and testament of Julius Lipman, deceased; Jennie Kind and Ferdinand I. Haber, as executors of and trustees under the last will and testament of Jonas Kind, deceased; Belle M. Kellner, Jennie K. Stiefel, Henry B. Kellner and Ferdinand I. Haber, as executors of and trustees under the last will and testament of Mary Meissel, deceased, reciting that they "claim to be the lawful owners and holders" of the 1896 lease and "have agreed to accept such new lease." The 1917 instrument provides for a rental of $3,700 a year, payable semi-annually and for the payment by the tenants of all taxes and charges.

Jennie K. Stiefel died and letters testamentary on her estate were granted in July, 1922, to Bertie S. Schwed and Wilma S. Haber; Henry B. Kellner died and letters testamentary were granted in November, 1935, to Guaranty Trust Company of New York and Charles L. Kellner.

The 1917 lease of the premises involved herein was, on May 4, 1920, assigned to the Hampton-Suffolk Corporation by the estates of Julius Lipman, Jonas Kind and Mary Meissel, the landlord

consenting thereto subject " to the agreement of the said Hampton-Suffolk Corporation to pay an additional rent of $100.00 per annum, for the remainder of the term of the said lease," which agreement provided, however, that such additional rent shall not be deemed a part of the rent reserved " for the purpose of any renewal thereof."

The Hampton-Suffolk Corporation executed a purchase-money mortgage on the assigned leasehold to the assignors, the mortgage providing that on demand of the mortgagees there would be deposited with them the ground rents and taxes.

The lease was thereafter assigned to the 93 to 105 Third Avenue Corporation (with the consent of the landlord), which in turn assigned to Frieda Brookner, who thereafter assigned to T. M. C. Realty Corporation.

William Pitt Mason, Jr., in January, 1931, became the owner, by mesne assignments from Wilma S. Haber, of a one-eighteenth interest in the mortgage on the lease; Harry Siff acquired a one-eighteenth interest in such mortgage in February, 1925, from Bertie S. Schwed; Samuel Weisenberg acquired a one-ninth interest therein, by mesne assignments, from Kellner and Haber, as executors and trustees of the Mary Meissel estate.

The T. M. C. Realty Corporation, the present owner of the lease, contests the service of the precept on the ground that such service was not made as provided by section 1421 of the Civil Practice Act, and that the attempted service under the provisions of sections 24 and 25 of the Stock Corporation Law does not confer jurisdiction upon the court. That question has been heretofore raised in this proceeding, and Mr. Justice EDER has sustained the service (165 Misc. 1, Nov. 16, 1937). In deference to that decision, I have overruled the contention now again sought to be raised. The other parties do not contest the right of the landlord to possession, but .claim that there is no personal liability, as to them, for rent.

The landlord contends (1) that all of the tenants who executed the 1917 lease are bound in their individual capacities, notwithstanding their signatures as executors and trustees; (2) that parol evidence of an agreement not to hold them personally liable is inadmissible; (3) that the assignment of the lease did not release the original tenants, notwithstanding the agreement for an additional rental payment; (4) that he has not been guilty of laches in failing to insist upon prompt payment; (5) that the mortgagees on the leasehold as such are liable for rent; (6) that the discharge of the executors upon accountings did not release them from the liability under the lease.

Generally a personal representative is individually liable on contracts originating with himself and a suit will not lie against

him in his representative capacity (*O'Brien* v. *Jackson*, 167 N. Y. 31), although if the debt be properly incurred he has recourse over against the estate. The various executors herein claim that the contract in question did not originate with them but was an obligation created by their respective decedents.

The lease in question did, to some degree at least, originate with the respective decedents, for it was given in pursuance to a provision contained in the lease of 1896, giving to the landlord the option to purchase the buildings on the property in 1917 or to grant a new lease for a further period of twenty-one years. There was, however, no obligation on the part of the tenants to accept such new lease. Their interest might dictate that course, for otherwise the value, if any, of the structures then in existence might be lost, but that is not sufficient to release them.

In *Chisholm* v. *Toplitz* (82 App. Div. 346; affd. on opinion below, 178 N. Y. 599) the defendant was an administrator *c. t. a.* and was sued in his individual capacity for rent. His decedent was a lessee for a term which did not expire until one year after the death of decedent. The lease, only of the land, provided for perpetual renewals at the option of the lessee, but made no provision for payment for any structures on the land in the event that the option was not exercised. The defendant did exercise the option, and the renewal lease was made to him as administrator. The court there overruled the contention that defendant was liable only in his representative capacity. It is claimed here that that case is not in point because there the option was given to the lessee while in our case it is the lessor who was to exercise the right. However, there was no legal compulsion requiring the executors here to agree to the renewal. (*Zorkowski* v. *Astor*, 156 N. Y. 393.) Of course, if the lease were not renewed the estate would have lost the value of the structures on the property, assuming that they had any value. As the court said in the *Chisholm* case (*supra*), where the same argument was made: " Whether it was a judicious act to renew the lease in order to save the building is a question in which the legatees or distributees of the estate are interested and upon which they are entitled to be heard. They could not be so heard if the landlord had sued the administrator, as such, in an action at law."

The claim here did not exist at the time of the death of the various decedents, and while it grows out of matters in connection with the administration of the estate, the action lies against the representatives personally (*Schutz* v. *Morette*, 146 N. Y. 137; *Schweickert* v. *Conway*, 224 App. Div. 846), just as executors are personally liable upon an agreement for an extension of a mortgage, where the decedent was not liable upon the bond. (*Olin* v. *Arendt*, 27 Misc. 270;

*Matter of Daufkirch*, 145 id. 396.) It follows, therefore, that all of those who signed the 1917 lease are personally liable, notwithstanding the description annexed to their signatures or the manner in which they are described in the lease.

The executors claim that when they signed the lease in question the landlord agreed not to look to them individually. The landlord argues that parol evidence to that effect is inadmissible. It has been held that such evidence may be received (*Troy* v. *Topping*, 9 Wend. 273; 13 id. 557; *Hellawell* v. *Busch*, 248 App. Div. 737), but the testimony adduced on the trial herein is too nebulous to support a finding that the landlord agreed to release executors from personal liability.

The original tenants next contend that they were released from liability " by reason of a novation," their brief stating that " the agreement to extinguish the tenants' liability may be implied as a matter of law," for they concede that there was no express agreement of release when the lease was assigned. There was no novation, however, as matter of law. The lease contains a covenant against assignment without the written consent of the landlord, and the giving of the consent to the assignment to the Hampton-Suffolk Corporation did not release the original tenants.

" The original lessee, however, because of privity of contract remained liable on the covenants although privity of estate was destroyed." (*Gillette Bros.* v. *Aristocrat Restaurant*, 239 N. Y. 87, 90.)

Nor did the consent to the assignment of the lease constitute a surrender. On an assignment of a lease there is no surrender unless, upon a most favorable construction in favor of the landlord, the acts are absolutely incompatible with a continued existence of the lease. Here the lease is continued and the assignment was made in accordance with its terms. Mere acceptance of rent from the assignee (*Wallace* v. *Dinniny*, 11 Misc. 317) or consent to the assignment and acceptance of rent from the assignee (*Ranger* v. *Bacon*, 3 Misc. 95) does not constitute a surrender (*Halbe* v. *Adams*, *No. 1*, 172 App. Div. 186).

The lease herein provides against its assignment without the consent of the landlord " in writing * * * first had and obtained for every assignment." The landlord was under no duty to give his consent, and could withhold such consent, even arbitrarily. (*Boskowitz* v. *Cohn*, 197 App. Div. 776; *Symonds* v. *Hurlbut*, 208 id. 147; *Ogden* v. *Riverview Holding Corp.*, 134 Misc. 149; affd., 226 App. Div. 882.) Hence the landlord was at liberty to impose such conditions as he deemed proper as a prerequisite to his consent to the assignment. He did impose the condition that

the assignor pay an additional $100 per annum, and the lease was assigned with full knowledge of that condition. However, the original tenants did not assume any personal obligation with respect to that additional payment for the consent of the landlord to the assignment refers only to the agreement of " the Hampton-Suffolk Corporation to pay an additional rent of $100.00 per annum," and the assumption agreement of the Hampton-Suffolk Corporation specifically provides that " the additional rental shall not be deemed a part of the rental reserved * * * for the purpose of any renewal," clearly showing a differentiation between the rent and the so-called additional rent.

When the landlord consented to the assignment of the lease to the Hampton-Suffolk Corporation and the latter assumed the obligations of the lease the original tenants stood in the position of sureties (*National Surety Co.* v. *Trilby Realty Corp.*, 249 App. Div. 566), and, therefore, they now claim to be released from any obligation because of the failure of the landlord to move more promptly and in addition they seek a judgment against the landlord for some $30,000 damages. No proof was offered to sustain the offset, nor is the claim of laches, or negligence, available here. There was no obligation on the part of the landlord to give notice of a default to the surety. (*Barhydt* v. *Ellis*, 45 N. Y. 107; *Westchester Mtge. Co.* v. *McIntire, Inc.*, 174 App. Div. 525.) It was the duty of the tenant to seek out the landlord and pay the rent; there was no duty on the landlord to commence proceedings for the collection thereof, particularly in the absence of proof of any damage done to the surety.

When the Hampton-Suffolk Corporation purchased the lease it gave a purchase-money mortgage on such lease to the assignors, and it is now sought to hold such leasehold mortgagees for the rent due upon the theory that they are, in law, the owners of the lease.

Estates for years are chattels real (Real Prop. Law, § 33); they are not real property. (Gen. Const. Law, § 40; *Matter of Althause*, 63 App. Div. 252; affd., 168 N. Y. 670.) It was held in *Rodack* v. *New Moon Theatre* (121 Misc. 63) by the Appellate Term, Second Department, that a leasehold mortgagee was an assignee of the lease and hence a necessary party to a summary proceeding and liable for the rent by reason of privity of estate. In *Hoffman Brewing Co.* v. *Wuttge* (234 N. Y. 469), however, it was held that a final order in a summary proceeding to dispossess the tenant, although not executed because the tenant voluntarily surrendered possession, effectually cut off the interest of a mortgagee of the leasehold, and in *Day & Night Garage Co., Inc.,* v. *Promin Eng.*

*Corp.* (144 Misc. 106) the Appellate Term in this Department held that· a mortgagee was not a necessary party to the summary proceeding, and seemingly disapproved the doctrine of the *Rodack* case (*supra*).

In *Hewen Co., Inc.*, v. *Thibaut Realty Co., Inc.* (154 Misc. 687), it is said (at p. 697): " The landlord urges that the mortgage of the leasehold was tantamount to an assignment thereof to the trustee. It is argued that by reason of this assignment, the trustee assumed the obligations of the leasehold, and, therefore, became bound to pay the rent. The law is to the contrary. The mortgagee did not take possession of the premises. He did not assume ownership of the leasehold assets *cum onere;* and, consequently, did not assume any liability for the payment of the rent prescribed."

The leasehold mortgagees, hence, are not liable, as such, for the unpaid rent.

Bertie S. Schwed, the executrix of the estate of Jennie K. Stiefel, deceased, further claims that she has been relieved of liability by virtue of the decree of the Surrogate's Court of Queens county, entered August 7, 1923, judicially settling her account.

In and prior to August, 1923, there does not seem to have been any default nor does it appear that Mrs. Schwed, as such executrix, ever paid any rent to the landlord. The mere fact that she may have known of the existence of the lease is not sufficient to charge her with liability for accruing unpaid rents. (*Johnson* v. *Corbett*, 11 Paige, 265.) The Surrogate's Court Act provides for the filing of contingent or unliquidated claims against estates (§ 207) and releases the executor from the claim if not filed as to any assets paid in satisfaction of lawful claims or in making distribution to the next of kin (§ 208).

" The contingent creditor is, therefore, under a duty to assert his claim within the statutory period or before the distribution of the estate." (*Matter of Horner*, 149 Misc. 695, 699.)

The landlord is, therefore, entitled to a final order awarding him possession and to a judgment in the sum of $12,200 against Ferdinand I. Haber and Guaranty Trust Company of New York and Charles L. Kellner, as executors and trustees under the last will and testament of Henry B. Kellner, deceased, and to a judgment against the T. M. C. Realty Corporation in the sum of $12,200.