TURQUOISE REALTY CORPORATION, Landlord, *v.* JEAN BURKE and
CLARA A. KAISER, Tenants, and CARL M. TAYLOR, Undertenant.

Municipal Court of New York, Borough of Manhattan, Ninth District, July 27, 1938.

*Nathan Spiro Cohen*, for the landlord.

*M. S. & I. S. Isaacs* [*Raymond Burdick* of counsel], for the
tenants.

GENUNG, J. In this summary proceeding for non-payment of
rent the tenants admit their failure to pay but allege that the land-
lord converted the security deposited, and seek judgment for the
difference between the unpaid rent and the security. The tenants
also deny the right of the landlord to collect for the submetered
items of water and electric current. The Appellate Division has
ruled adversely to the tenants' claim on that branch of the case.
(*Bush Terminal Buildings Co.* v. *Schwartz*, 241 App. Div. 872.
See, also, Picket, " The Legal Status of the Submeterer of Electric
Current," 37 Col. L. Rev. 227, 239, *et seq.*)

The first defense requires an inquiry into the effect of section
233 of the Real Property Law Laws of 1935, chap. 581).

The lease is for the term from June 1, 1937, to September 30,
1938, at an annual rental of $3,600, payable monthly in advance,

and the tenants agreed to deposit $900 as security for their compliance with their obligations, which sum was to be returned to the tenants at the expiration of the lease, with interest, less any amount due from the tenants.

About July 2, 1937, the tenants gave the sum of $900 to the landlord's agent, who at the end of that month forwarded it to the landlord. The landlord deposited the money in its general checking account, which thereafter, for a period of three days, was depleted below that amount.

In December, 1937, the landlord returned the security to its agent, and it remained in the agent's " office account " until February, 1938, when it was again placed in the landlord's general account. On the same day the landlord turned the amount over to the second mortgagee of the premises, although no transfer of title to the premises or assignment of lease was made.

Meanwhile, and in February, 1938, the tenants assigned the lease to the undertenant herein, reserving to themselves all rights in and to the security. Such assignment, however, did not release the tenants from their liability on the covenants in the lease. (*Gillette Bros.* v. *Aristocrat Restaurant,* 239 N. Y. 87, 90; *Durand* v. *Lipman,* 165 Misc. 615, 621.)

Prior to the enactment of the statute (Real Prop. Law, § 233) the relation between the parties as to the deposit would have been termed that of debtor and creditor. (*Levinson* v. *Shapiro,* 238 App. Div. 158; affd., 263 N. Y. 591.) Now the Legislature has provided that moneys deposited as security under leases " shall be a trust fund in the possession of the person with whom such deposit * * * shall be made and shall not be mingled with other funds or become an asset of such trustee."

Whatever may be the construction of the provisions of the Penal Law with respect to the question of the criminal liability of a landlord as " trustee " (See *People* v. *Horowitz,* 138 Misc. 794, and *People* v. *Klinger,* 165 id. 634), the civil statute itself provides for no penalty or forfeiture. In the absence of any such provision by the Legislature it is to be assumed that no penalty should follow except that in the case of any conversion.

The landlord's duty to keep the deposit as a " trust fund " and the tenants' obligation to pay rent for the use of the property are independent. (3 Williston on Contracts [Revised ed.], § 890.) It follows that the conversion is not a *defense* to the claim for rent.

A more difficult question is as to the right of the tenants to presently recover on their counterclaim. True, a technical conversion of the security has been established, although the record shows that at the time of the trial the security had been deposited

in a special account of the second mortgagee in possession under an assignment of rents and transferred to the new purchaser, without any notice to the tenants. The conversion stems from the breach of the statutory duty of the landlord. Nevertheless, the deposit has a contractual character as well. Though the statute commanded that it be kept in a certain *manner*, the contract fixes the *time* for its return, *i. e.*, " at the termination of the lease on September 30, 1938 " (unless renewed). Dispossession of the tenants will not end their obligations under the lease, for they have agreed that their liability should survive summary eviction; and, until then, the landlord may resort to the deposit in satisfaction of the obligations which may accrue subsequent to dispossession. To permit a recovery under the counterclaim *at this time* would, therefore, literally undo the provisions of the lease.

Moreover, as was noted in *Matter of Atlas* (217 App. Div. 38), in view of the continuing liability of the tenants, any recovery by them on their counterclaim would permit the landlord to maintain a suit in equity to compel the tenants to restore the deposit. Such circuity of procedure should be avoided unless imperatively dictated by jurisdictional limitations. No such limitation is perceived. As was said by Judge LAUER, " there exists * * * a good equitable defense to the counterclaim " (*Alumor Garage, Inc., v. Stivers, Inc.*, 128 Misc. 400), and as a consequence the counterclaim should be dismissed (See Wilson, " Lease Security Deposits," 34 Col. L. Rev. 426, 468, and cases there cited), without prejudice to an original suit after the conclusion of the term, and without prejudice to a suit against the present holder of the fund to trace and recover so much of the trust fund as the tenants may be entitled to after the expiration of the term.

A final order will issue in favor of the landlord for the full amount of its claim and dismissing the counterclaim without prejudice. Five days' stay. On rehearing motion for new trial is denied.