OPINION OF THE COURT
Jay Stuart Dankberg, J.
Does a failure to give a required security deposit constitute a breach of a substantial obligation of a tenancy? Given the multitude of landlord-tenant relationships in New York, it may seem strange, but neither the court’s nor counsel’s research has uncovered any reported decision on point. Accordingly, this is a case of apparent first impression.
In this holdover summary proceeding based upon the alleged breach of a substantial obligation of tenancy, I give full credence to the testimony of landlord’s witness and find and decide the following.
On May 16, 1980, petitioner landlord and respondent tenant executed a lease for the period June 1, 1980 to May 27, 1981 at a monthly rent of $950. The leasehold estate is covered by the Rent Stabilization Law of 1969 (as amd),- Pursuant to the lease, tenant gave a check representing one month’s rent to be held as a security deposit. The check was dishonored for insufficient funds. A letter did not result in payment and landlord commenced legal proceedings to recover possession of the apartment. After *835 having been served with the applicable notices and a petition and notice of petition, respondent defaulted in making a court appearance and an inquest was held.
“It is quite usual for a landlord to require a tenant to deposit with him a sum of money or other security, such as a bond, to secure payment of the rent, or performance of the covenants and conditions of the lease on the tenant’s part to be performed” (Rasch, New York Landlord and Tenant, Summary Proceedings, [2d ed], § 379).
Both of the major New York City tenancy protective enactments — the Rent Stabilization Code, in section 63, and the Rent and Eviction Regulations (Rent Control), in section 65 — authorize a landlord to have a lease clause requiring the deposit of one month’s rent as security. In fact, the giving of a lease security deposit is so universal, section 143-c of the Social Services Law allows the Department of Social Services to provide lease security for a recipient of public assistance by means of an agreement, by depositing money in an escrow account, or even by making a deposit in cash.
It has long been established in New York that a tenant who has given a security deposit must keep good the amount of the deposit for such time as he continues in possession of the demised premises pursuant to the lease (see Matter of Atlas, 217 App Div 38, 42; see, also, Turquoise Realty Corp. v Burke, 168 Misc 670; Euclid Holding Co. v Kermacoe Realty Co., 131 Misc 466).
Under the 1926 holding of Matter of Atlas (supra), if the security was not kept whole, the landlord could “maintain a suit in equity to compel the tenants to restore the deposit” (Turquoise Realty Corp., supra, p 672). In 1980, does a landlord have available any other alternatives to compel a tenant to restore or (as here) provide an otherwise legal, lease required security deposit?
The nature of the security deposit relationship has undergone massive changes in New York since 1926, when Matter of Atlas was decided. Until 1935, it was uniformly held that a tenant’s deposit of security under a lease created a debtor-creditor relationship by which the landlord could *836 use such money until the time specified for repayment (Mendelson-Silverman, Inc. v Malco Trading Corp., 262 NY 621; Malco Trading Corp. v Mendelson-Silverman, Inc., 240 App Div 322, affd 264 NY 651; Rambach v Heights Theaters, 239 App Div 203; Jahmes Co. v Propper, 238 App Div 326; Levinson v Shapiro, 238 App Div 158).
That relationship was changed by the Legislature in 1935. By operation of a statute enacted to provide protection to the lessee-tenant (Mallory Assoc. v Barving Realty Co., 300 NY 297, 301-302), known in 1980 as section 7-103 of the General Obligations Law (originally enacted as section 233 of the Real Property Law, subsequently amended several times, repealed and now re-enacted), the debtor-creditor relation between landlord-lessor and tenant-lessee has been transformed into a trust. With this legislative mandate, landlords holding lease security deposits were changed from debtors into trustees (People v Horowitz, 309 NY 426, 428; Mallory Assoc. v Barving Realty Co., supra; Matter of Perfection Tech. Servs. Press [Cherno-Dalecar Realty Corp.], 22 AD2d 352, 356, affd 18 NY2d 644).
Though such security deposit is held in a trust capacity, such trust “should not serve to obscure the basic nature of a security deposit. A landlord requires such a deposit, although still the property of the tenant, to attain the status of a protected creditor should the tenant breach the lease” (Glass v Janbach Props., 73 AD2d 106, 108-109).
A lease, in fact, is more than a mere simple conveyance of an interest in real estate “for a fixed period of time. Typically it is also a contract which requires the parties, particularly the tenant, to fulfill certain obligations while the lease is in effect” (Geraci v Jenrette, 41 NY2d 660, 665); amongst other mutual obligations (usually) are the tenant’s giving of a security deposit and the landlord’s maintenance of it as a trustee in an interest-bearing account (General Obligations Law, § 7-103).
In the instant case, by giving a check for lease security that failed to be honored by reason of insufficient funds and by failing subsequently to “make good” payment on such check, the tenant has breached the lease under which *837 she resides (for other possible effects of a check dishonored for insufficient funds, see Martin v Ankhra, NYLJ, Dec. 9, 1980, p 14, col 3).
However, from the nature and intent of the statutory and case law, and from the trust relationship to be created by the legal, lease required payment of security, it is clear that a landlord’s possible remedies in event of such a breach by a tenant in possession of rented premises are quite limited. In the event a breach of payment occurs, since money to be given under a lease security deposit clause is not “rent”, such funds cannot be recovered by the landlord by a Housing Part nonpayment summary proceeding. Any other plenary lawsuit — be it a Civil or Supreme Court action— would be a time-consuming and expensive means of collecting money to be held in trust.
While some may argue that such cumbersome legal procedure is “the best of all possible worlds” (Voltaire, Candide), others may well contend that “the law is an ass” (Dickens, Oliver Twist) if it relegates a landlord solely to such burdensome methods of acquiring trust funds. The law is not an ostrich with its head in the sands of reality— it is a living, vibrant force, with courts having a duty to aid in the correction of perceived wrongs, as long as such help is consistent with principles of due process and justice.
Accordingly, based upon all of the above, it is held that the furnishing of a lawful security deposit under a lease constitutes a substantial obligation of a tenancy. Thus, if a tenant breaches this obligation, the landlord may commence a holdover summary proceeding to obtain possession of the premises.
Therefore, based upon the breach of the substantial obligation of the tenancy that has occurred herein and for the reasons stated, judgment of possession is directed in favor of petitioner landlord and against respondent tenant. Issuance of the warrant of eviction is stayed until December 31, 1980, provided petitioner landlord serves a copy of the final judgment upon respondent tenant by December 21, 1980, with notice of entry; otherwise it is stayed for a period ending 10 days after such service.
However, since it has long been held that the law abhors *838 a forfeiture (Lyon v Hersey, 103 NY 264, 270), especially one which would result under facts as these, if the respondent tenant pays the sum of $950 for a security deposit to petitioner landlord by December 31, 1980 (or within such later 10-day period as provided supra), she may apply to this court for relief from the judgment of possession in favor of petitioner landlord.
Use and occupancy, on consent of petitioner, is established at the rate heretofore reserved as rent. Attorney fees to petitioner to be established by a hearing to be held on December 18, 1980 in Part 49B. The court shall advise respondent of such a hearing date by postcard notice.